193 P.3d 839

Lily E. HAMILTON, on behalf of Amber J. LETHEM, a minor, Respondent/Plaintiff–Appellee.

v.

Chris L. LETHEM, Petitioner/Defendant–Appellant.

No. 27580.

Supreme Court of Hawai'i.

Oct. 14, 2008.

Robert H. Thomas (of Damon Key Leong Kupchak Hastert), Honolulu, for petitioner/defendant-appellant.

Stephen T. Hioki, for respondent/plaintiff-appellee, on the record.

MOON, C.J., LEVINSON, NAKAYAMA, and DUFFY, JJ.; and ACOBA, J., concurring separately.

**2**

Opinion of the Court by MOON, C.J.

On September 23, 2008, this court accepted a timely application for a writ of certiorari, filed on August 14, 2008, by petitioner/defendant-appellant Chris L. Lethem (Father), seeking review of the Intermediate Court of Appeals' (ICA) June 23, 2008 judgment on appeal, entered pursuant to its May 16, 2008 summary disposition order (SDO). *See Hamilton v. Lethem,* No. 27580, 117 Hawai'i 379, 183 P.3d 756, 2008 WL 2069780 (App. May 16, 2008) (Foley, J., dissenting). Therein, the ICA—after holding that the underlying appeal brought by Father was moot—vacated the Family Court of the First Circuit's [1] (1) September 23, 2005 *ex parte* temporary restraining order (TRO) issued against Father; (2) October 23, 2005 order regarding the TRO; and (3) March 3, 2006 Findings of Fact (FOFs) and Conclusions of Law (COLs) [hereinafter, collectively, the TRO, FOFs, and COLs] and remanded the case to the family court with instructions to dismiss the underlying case.

Briefly stated, respondent/plaintiff-appellee Lily E. Hamilton (Mother), on behalf of her then-fifteen-year-old daughter (Minor), obtained a TRO against Father based upon Father's alleged physical and psychological abuse of Minor. At the show cause hearing on the TRO, Father unsuccessfully asserted the parental justification defense.[2] Ultimately, the family court confirmed the TRO, allowing it to remain in effect until December 22, 2005 (the TRO's original ninety-day term). The TRO expired during the pendency of Father's appeal. Consequently, the ICA unanimously held that, because Father's appeal did not fall within any of the exceptions to the mootness doctrine, the appeal was moot. A majority of the ICA, however, proceeded to vacate the family court's TRO, FOFs, and COLs, remanding the case with instructions to the family court to dismiss the underlying case. The dissent disagreed, opining that the appeal should be dismissed.

Father argues on application that the ICA erred when it determined his appeal did not fall within any of the exceptions to the mootness doctrine. As such, Father contends that the ICA erred in dismissing his appeal without addressing the merits.[3]

Based upon the discussion below, we hold that the ICA erred in failing to address the merits of Father's appeal. We, therefore, vacate the ICA's June 23, 2008 judgment on appeal and remand this case to the ICA with instructions to address the merits of Father's appeal, consistent with this opinion.

## I. BACKGROUND

### A. *Proceedings Before the Family Court*

As succinctly summarized by the ICA:

On September 23, 2005, [Mother], on behalf of [Minor], filed an ex parte petition for a [TRO] against Father under [HRS] § 586–3 (1993 & Supp.2004). Father allegedly had physically and psychologically abused [Minor] on and prior to August 25, 2005, by striking her during a heated argument about the [Minor's] assisting a friend in obtaining a birth control product. The [TRO], granted on September 23, 2005,

---

1. The Honorable Darryl Y.C. Choy presided over the underlying proceedings.

2. The parental justification defense, codified at Hawai'i Revised Statutes (HRS) § 703–309 (1993), is contained in the "General Principles of Justification" section of the Hawai'i Penal Code and provides in relevant part:

 The use of force upon or toward the person of another is justifiable under the following circumstances:
 (1) The actor is the parent or guardian or other person similarly responsible for the general care and supervision of a minor, or a person acting at the request of the parent, guardian, or other responsible person, and:
 (a) The force is employed with due regard for the age and size of the minor and is

reasonably related to the purpose of safeguarding or promoting the welfare of the minor, including the prevention or punishment of the minor's misconduct; and
 (b) The force used is not designed to cause or known to create a risk of causing substantial bodily injury, disfigurement, extreme pain or mental distress, or neurological damage.

3. On direct appeal before the ICA, Father essentially argued that: (1) HRS chapter 586 unconstitutionally "infringes upon a parent's right[ ] to discipline and raise [his or her] children without governmental interference" as "parental discipline is not child or domestic abuse"; and (2) the family court abused its discretion in finding that past acts of abuse had occurred.

had an expiration date of December 22, 2005.

At a hearing on October 5, 2005, the [f]amily [c]ourt found the TRO was justified [4] and [ruled] that no further action was necessary. It its Order Regarding [TRO], filed the same day, the [family] court declared no further action would be taken and that the TRO would expire on its own on December 22, 2005.

SDO at 1–2 (footnote omitted).

Additionally, at the close of the hearing, Father's counsel argued that, pursuant to the parental justification defense, *see supra* note 2, the events that transpired between Father and Minor were not "an abuse situation," but, instead,

> what we really have is a daughter who's you know, trying to find a way not to follow the rules, and a dad who is trying to enforce those rules. And the two things are just in conflict, and that's exactly when it is appropriate to use discipline.

The family court, however, rejected Father's argument, orally ruling that "what happened in this [case] was not parental discipline. On those grounds, this court is compelled to grant ... this restraining order. As you know, this [sic] will be no further action. [The c]ourt believes that the restraint was justified."

On November 3, 2005, Father timely filed his notice of appeal from the family court's October 5, 2005 order. Thereafter, on March 3, 2006, the family court—at the request of Father—entered its FOFs and COLs. Of particular relevance to the instant application are the following COLs:

> The material allegations of the petition have been proven. [Father] is the father of [Minor] and statutory blood relationship has been established. [Father] did physically harm, injure[ ] or assault[ ] [Minor] by striking her on August 25, 2005 and by threatening her with further physical harm.
>
> [Father] has raised parental discipline under [HRS § 701–309(a) ]. However, that section applies to criminal not civil actions. Moreover, while it would appear that [Minor] was disciplined by [Father] for assisting her friend with obtaining a birth control product, discipline over issues of morals lies with [Mother], who has sole legal and physical custody. Assuming additionally that [Father] struck [Minor] because of her refusal to discuss this issue late during a school night, the court concludes that such an action is not proper parental discipline.
>
> The court, therefore, concludes that the allegations in support of the [TRO] have been prove[n] and that allowing the order to remain in full force and effect until the set expiration date of December 22, 2005 as requested by [Mother] is justified.

**B. Appeal Before the ICA**

On appeal, Father (appearing *pro se* ) challenged the family court's FOFs and COLs. Father essentially argued that: (1) HRS chapter 586 (governing domestic abuse pro-

---

4. The family court's ruling was based in part upon HRS § 586–4(c) (2006), which provides:

> The family court judge may issue the ex parte [TRO] orally, if the person being restrained is present in court. The order shall state that there is probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent. The order further shall state that the [TRO] is necessary for the purposes of: preventing acts of abuse or preventing a recurrence of actual domestic abuse; and ensuring a period of separation of the parties involved. The order shall also describe in reasonable detail the act or acts sought to be restrained. Where necessary, the order may require either or both of the parties involved to leave the premises during the period of the order, and also may restrain the party or parties to whom it is directed from contacting, threatening, or physically abusing the applicant's family or household members. The order shall not only be binding upon the parties to the action, but also upon their officers, agents, servants, employees, attorneys, or any other persons in active concert or participation with them. The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:
> (1) Contacting, threatening, or physically abusing the protected party;
> (2) Contacting, threatening, or physically abusing any person residing at the protected party's residence; or
> (3) Entering or visiting the protected party's residence.

tective orders) unconstitutionally "infringes upon a parent's right[ ] to discipline and raise [his or her] children without governmental interference" as "parental discipline is not child or domestic abuse"; and (2) the family court abused its discretion in finding that past acts of abuse had occurred. Although recognizing that the TRO had expired,[5] Father nevertheless contended that his appeal was not moot. In his view, the TRO's effect on Mother's and Father's ongoing custody case with respect to Minor—of which he asked the ICA to take judicial notice—"was dramatic, unfair, wrong[,] and significant."[6] Further, Father argued that, even if his appeal was moot, it fell within the exceptions to the mootness doctrine.[7]

In response, Mother contended, *inter alia,* that: (1) Father's appeal was moot because the TRO expired on December 22, 2005; (2) Father did not and could not "demonstrate that the [family] court's [FOFs were] 'clearly erroneous'"; and (3) Father's contention that the entry of the TRO was erroneous was without merit because Mother had sole legal and physical custody of Minor, and, as such, she had the "sole right to determine the manner of discipline of said minor." Thus, Mother requested that the ICA dismiss Father's appeal as moot.

On May 16, 2008, the ICA, in a 2–1 SDO, held that Father's appeal was moot and that it did not fall within any exceptions to the mootness doctrine, discussed more fully *infra.* SDO at 2–4. However, as previously stated, the ICA, relying on its decision in *McCabe Hamilton & Renny Co. v. Chung,* 98 Hawai'i 107, 43 P.3d 244 (App.2002) (holding that imposition of issue preclusion where appellate review has been frustrated by mootness is obviously unfair) [hereinafter *McCabe* ], vacated the family court's TRO, FOFs, and COLs, remanding the case to family court with instructions to dismiss the

underlying action. SDO at 5–6. Specifically, the majority concluded that, in light of *McCabe,*

> Father's appeal from the September 23, 2005 TRO (and the related orders) [was] moot[,] and we do not reach the merits of his points on appeal. *See Johnston v. Ing,* 50 Haw. 379, 381, 441 P.2d 138, 140 (1968) (noting that "appellate courts will not consider moot questions"). In reaching this conclusion, we note that the mootness of this case was not the result of any action taken by [F]ather. Because we are unable to reach the merits of Father's claim, we vacate the [f]amily [c]ourt's orders so that they will not have any issue preclusive effect.

*Id.* at 5. Consequently, the ICA remanded the case to family court "with direction to dismiss the action." *Id.* at 6.

Contrary to the majority's position, Associate Judge Foley, in his two-sentence dissent, declared that, inasmuch as Father's appeal was moot, it should have simply been dismissed. Dissenting Op. at 2, 193 P.3d at 840. In support of its position, the dissent cites to this court's decision in *Lathrop v. Sakatani,* 111 Hawai'i 307, 312–13, 141 P.3d 480, 485–86 (2006) (dismissing the appeal as moot because the appellants failed to seek a stay on the execution of the circuit court's order expunging the *lis pendens* and the property was sold to a third party pending appeal).

The ICA entered its judgment on appeal on June 23, 2008. On August 14, 2008, Father filed his application for a writ of certiorari. Mother did not file a response.

## II. *STANDARD OF REVIEW*

 It is axiomatic that mootness is an issue of subject matter jurisdiction. "Whether a court possesses subject matter jurisdic-

---

5. Father filed his opening brief on May 19, 2006, five months after the December 22, 2005 expiration of the TRO.

6. We note that, although Father requested the ICA take judicial notice of the custody case, he failed to provide the relevant file(s) with his appeal.

7. As discussed more fully *infra,* this court has recognized two exceptions to the mootness doctrine: (1) the public interest exception; and (2) the "capable of repetition, yet evading review" exception. *See Doe v. Doe,* 116 Hawai'i 323, 327 n. 4, 172 P.3d 1067, 1071 n. 4 (2007) (noting the public interest exception and the "capable of repetition, yet evading review" exception are "separate and distinct").

tion is a question of law reviewable *de novo.*" *Kahoʻohanohano v. Depʼt of Human Serv.,* 117 Hawaiʻi 262, 281, 178 P.3d 538, 557 (2008) (citation and internal quotation marks omitted).

## III. *DISCUSSION*

As previously stated, Father—arguing *pro se*—contends that the ICA erred in its application of the mootness doctrine to the facts of his case. Specifically, Father argues that his appeal falls within at least one of the exceptions to the mootness doctrine.

It is well-settled that:

> The mootness doctrine is said to encompass the circumstances that destroy the justiciability of a suit previously suitable for determination. Put another way, the suit must remain alive throughout the course of litigation to the moment of final appellate disposition. Its chief purpose is to assure that the adversary system, once set in operation, remains properly fueled. The doctrine seems appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal—adverse interest and effective remedy—have been compromised.

*Lathrop,* 111 at 312–13, 141 P.3d at 485–86 (citations omitted) (format altered); *see also In re Doe Children,* 105 Hawaiʻi 38, 57, 93 P.3d 1145, 1164 (2004) (stating that "the two conditions for justiciability relevant on appeal [are] adverse interest and effective remedy").

In this case, the TRO issued by the family court expired on December 22, 2005, two years and six months before the ICA issued its SDO. Thus, the ICA believed that Father's appeal was moot because "the expiration of the TRO prevent[ed the ICA] from providing an effective remedy." SDO at 3 (citations omitted). However, this court has explicitly recognized two exceptions to the mootness doctrine: (1) the "capable of repetition, yet evading review" exception [hereinafter, CRER exception]; and (2) the public interest exception. *See Doe v. Doe,* 116 Ha-

waiʻi 323, 327 n. 4, 172 P.3d 1067, 1071 n. 4 (2007) (noting the public interest and CRER exceptions are "separate and distinct"). Additionally, although never explicitly adopted by this court, the ICA, in *In re Doe,* 81 Hawaiʻi 91, 912 P.2d 588 (App.1996), adopted and applied another mootness exception—the "collateral consequences" exception—which Father argues should be adopted by this court. Accordingly, the issue here, as framed by Father in his application, is whether any of the aforementioned exceptions to the mootness doctrine apply, thereby requiring review of the merits of his appeal. We, therefore, review each exception in turn.

With regard to the first exception, this court has stated:

> The phrase, "capable of repetition, yet evading review," means that "a court will not dismiss a case on the grounds of mootness where a challenged governmental action would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit."

*In re Thomas,* 73 Haw. 223, 226–27, 832 P.2d 253, 255 (1992) (citation omitted).

 Here, the ICA concluded that "there [was] no reasonable expectation that the precise factual situation underlying this dispute is likely to recur and, therefore, the facts in this case [were] not capable of repetition, yet evading review, within the meaning of the recognized exception to mootness." SDO at 3–4. (citations omitted).

Father argues that the ICA erred by failing to hold that his appeal fell within the CRER exception because

> the issue is ... whether a challenged governmental action would evade full review due solely to the passage of time[.] Undoubtedly, the issue of a [ninety-]day TRO—the challenged governmental action [—] would always result in an expiration prior to appellate review.

Additionally, Father alleges that he continues to seek custody of the parties' youngest daughter.[8] Thus, he argues that the same

8. The record reveals that Father and Mother have a daughter who is younger than Minor.

Although the age of the younger daughter is not specifically reflected in the record, both parties

situation is capable of repetition inasmuch as a "reasonable person could conclude that Father has before and will again move for custody of [Minor-sister,] and Mother, with or without her attorney, will apply for another ... *ex parte* TRO on behalf of [Minor-sister] to prevent a custody decision on the merits."

Conversely, Mother contended on direct appeal that Father's case did not fall within any of the exceptions to the mootness doctrine inasmuch as

[t]he present case, as with all other TRO cases involving abuse of a family member[, was] based on the facts of each case. The [family c]ourt must decide on a case by case basis whether the acts of an alleged perpetrator arise [sic] to such a level that an order for protection should arise. Given the paucity of the record on appeal, this [c]ourt should refrain from applying said exception to the mootness doctrine. This [c]ourt does not have all the facts before it to make such a decision.

We believe that a TRO, by its very nature, will always evade review because it would, as it did here, expire within the initial ninety-day term. *See* HRS § 586-5 (2006) (stating that a TRO granted pursuant to chapter 586 shall not exceed ninety days). The ICA seemingly agrees, having held in *McCabe* that "TROs, because of their fundamentally fleeting nature, will in most instances evade review." 98 Hawai'i at 120, 43 P.3d at 257. Thus, the issue here is whether the factual situation underlying this case is "capable of repetition."

In *McCabe*, the ICA determined that an *ex parte* TRO entered against one employee in favor of a group of other employees, pursuant to Hawai'i Rules of Civil Procedure (HRCP) Rule 65 (2007) (governing the issuance of TROs), was rendered moot due to the TRO's expiration. 98 Hawai'i at 117, 43 P.3d at 254. The *McCabe* court concluded that the appellants' contention, *i.e.*, that the factual situation presented was "capable of repeti-

tion," was "mere speculation[ ]" because "*there [was] nothing in the record that demonstrate[d] a* '*reasonable expectation that the alleged violation [would] recur.*'" [9] *Id.* at 119, 43 P.3d at 256. (emphases added) (citation omitted). The *McCabe* court, therefore, held that the case did not fall within the CRER exception. *Id.*

Here, Minor, during the pendency of this appeal, reached the age of majority and, as such, can no longer be the subject of Father's and Mother's custody dispute. SDO at 4. Thus, with regard to Minor, there is no "reasonable expectation" that the factual situation presented in this case could or would recur. Father, nevertheless, argues that, because there remains a dispute between Mother and Father regarding the custody of Minor-sister, the factual situation presented is capable of repetition. However, there is no evidence in the record that Father "has moved before and will again move for custody of [Minor-sister,] and Mother, with or without her attorney, will apply for another ... *ex parte* TRO on behalf of [Minor-sister] to prevent a custody decision on the merits." Although Father cites to the family court case that allegedly involved Father's and Mother's custody over Minor-sister, he has failed to include such case as part of the record on appeal. Thus, "there is nothing in the record that demonstrates a 'reasonable expectation that the alleged violation will recur.'" *McCabe*, 98 Hawai'i at 119, 43 P.3d at 256 (citation omitted). Accordingly, we conclude that Father's "contention that the precise factual situation underlying this dispute is likely to recur is 'too conjectural for appellate review.'" *Id.* (citation omitted).

■ With regard to the second exception to the mootness doctrine, this court has recently stated: "When analyzing the public interest exception, [this court] look[s] to (1) the public or private nature of the question presented, (2) the desirability of an authoritative determination for future guidance of

---

appear to agree that she is currently a minor [hereinafter, Minor-sister].

9. We note that the *McCabe* court did not address the merits of appellant's appeal but, nevertheless, vacated the TRO issued by the circuit court and

remanded the case for dismissal in order to prevent the TRO, "which [was] unreviewable because of mootness, from spawning any legal consequences." 98 Hawai'i at 121, 43 P.3d at 258 (citations and internal quotation marks omitted).

public officers, and (3) the likelihood of future recurrence of the question." *Doe v. Doe*, 116 Hawai'i 323, 327, 172 P.3d 1067, 1071 (2007) (citations and internal quotation marks omitted). The ICA summarily concluded that "the dispute in this case is of a private nature and it does not involve questions that affect the public interest." SDO at 3.

Father argues that his appeal falls within the public interest exception because the underlying issues affect "the fundamental rights of many Hawai'i families ... specifically given the conflict between a parent applying for a HRS [chapter] 586 *ex parte* TRO, on behalf of a minor, based on the other parent exercising their parental rights to discipline ... their child." Father additionally contends that "the facts of this appeal demonstrate the significant and problematic abuses with such TRO processes, and the negative harmful effect on families" and that, therefore, the issue whether the parental discipline defense applies in TRO proceedings "requires authoritative guidance from [this court]." We disagree.

Although Father contends that the TRO affects his constitutional right to raise his children, such right is personal to Father. As such, the question presented is of a private nature. Conversely, the cases in this jurisdiction that have applied the public interest exception have focused largely on political or legislative issues that affect a significant number of Hawai'i residents. For example, in *Doe*, we held that the public interest exception applied because it was "in the public's interest for this court to review the family court's ruling that Hawaii's grandparent visitation statute [was] unconstitutional on its face." 116 Hawai'i at 327, 172 P.3d at 1071. Additionally, in *Kaho'ohanohano v. State*, 114 Hawai'i 302, 162 P.3d 696 (2007), this court held that the subject appeal was of a public nature because the outcome would affect all state and county employees. *Id.* at 333, 162 P.3d at 727. Likewise, in *Right to Know Committee v. City & County of Honolulu*, 117 Hawai'i 1, 175 P.3d 111 (App.2007), the ICA held that the question presented was of a public nature because the issue whether the City

council must conduct its business in full view of the public and in compliance with the Sunshine Law was more public in nature than private. *Id.* at 9, 175 P.3d at 119. In the instant case, Father has not provided any evidence in the record that the issues presented in his appeal involve political or legislative matters that will affect a significant number of people. Thus, inasmuch as Father's appeal is of a purely personal nature, it fails to meet the first prong of the public interest exception. Accordingly, the ICA was correct in concluding that Father's appeal "does not involve questions that affect the public interest." SDO at 3.

■ We turn next to the "collateral consequences" exception to the mootness doctrine. Although never explicitly adopted by this court, the "collateral consequences" exception to the mootness doctrine, as previously indicated, was adopted and applied by the ICA in *In re Doe*, 81 Hawai'i 91, 912 P.2d 588 (App.1996). In *Doe*, the ICA determined that an appeal by a father from a family court order awarding full legal and physical custody of the father's and mother's children to the mother was not moot because, although an amended divorce order had been entered, "the case appealed ha[d] substantial continuing collateral consequences on the [father]." *Id.* at 99, 912 P.2d at 596. Specifically, the ICA—citing *Carafas v. LaVallee*, 391 U.S. 234, 88 S.Ct. 1556, 20 L.Ed.2d 554 (1968)—held that, "in addition to any other impact it may have on his life, the result of Father's appeal will have a direct impact on his rights to visit his children." *Id.* However, the ICA's decision in *Doe* does not provide much guidance with regard to what "collateral consequences" should be considered when determining whether this exception to the mootness doctrine applies.

Likewise, *Carafas* provides only limited guidance as to what factors a court should consider when applying the "collateral consequences" exception to the mootness doctrine. In *Carafas*, the Court granted certiorari to determine the sole issue whether the expiration of appellant's sentence while he was awaiting appellate review terminated federal jurisdiction due to mootness. 391 U.S. at 237, 88 S.Ct. 1556. Ultimately, the Court

determined that the appeal was not moot due to the "collateral consequences" flowing from the appellant's conviction. *Id.* at 237–38, 88 S.Ct. 1556. In particular, the Court pointed out that appellant could not, as a result of his conviction, engage in certain businesses, serve as an official of a labor union for a specified period of time, vote in any election, or serve as a juror. *Id.* Inasmuch as the *Carafas* Court determined that the appellant's appeal was not moot, it remanded the case for a decision on the merits. *Id.* at 241–42, 88 S.Ct. 1556.

On direct appeal in the instant case, Father urged the ICA to adopt the reasoning of the Connecticut Supreme Court in *Putman v. Kennedy,* 279 Conn. 162, 900 A.2d 1256 (2006). Therein, the *Putman* court was faced with the sole issue whether an appeal by a former husband from two separate domestic violence restraining orders entered in favor of former wife and against former husband was moot. 900 A.2d at 1258. During the pendency of the appeal, the TROs expired. *Id.* However, the *Putman* court concluded that "the expiration of a domestic violence restraining order does not render an appeal from that order moot because it is reasonably possible that there will be significant collateral consequences for the person subject to the order." *Id.* at 1258–59. Specifically, the *Putman* court held that:

> To invoke successfully the collateral consequences doctrine, the litigant *must show that there is a reasonable possibility that prejudicial collateral consequences will occur. Accordingly, the litigant must establish these consequences by more than mere conjecture, but need not demonstrate that these consequences are more probable than not.* This standard provides the necessary limitations on justiciability underlying the mootness doctrine itself. Where there is no direct practical relief available from the reversal of the judgment, as in this case, the collateral consequences doctrine acts as a surrogate, calling for a determination

whether a decision in the case can afford the litigant some practical relief in the future.

The array of collateral consequences that will preclude dismissal on mootness grounds is diverse, and includes harm to a defendant's reputation as a result of the judgment at issue. [10]

*Id.* at 1261–62 (emphases added) (citations, internal quotation marks, and original brackets omitted). The *Putman* court reasoned that, in the case before it, "the threat of reputation[al] harm [was] particularly significant ... *because domestic violence restraining orders [do] not issue in the absence of the showing of a threat of violence* [.]" *Id.* at 1262 (emphasis added). Thus, the court concluded that "being the subject of a court order intended to prevent or stop domestic violence may well cause harm to the reputation and legal record of the defendant." *Id.* at 1263. In so concluding, the court relied on cases from other jurisdictions which have examined the collateral consequences of domestic violence restraining orders and opined that such cases represent the majority view "that appeals from domestic violence restraining orders are not rendered moot by their expiration." *Id.* at 1263–64. Specifically, the *Putman* court agreed with other courts that have concluded that reputational harm is a collateral consequence of domestic violence TROs because of the "legitimate public contempt for abusers," "enhanced technology for information dissemination," and the "social stigma" of a "protective order granted based on a finding of family violence[.]" *Id.* (citations and internal quotation marks omitted). Additionally, the *Putman* court agreed that a collateral consequence also includes the legal ramifications flowing from the issuance of domestic violence TROs because of their "effect in future bail proceedings, ... future presentence investigations, in-court impeachments[,] and child custody determinations." [11] *Id.* (citations omitted). According-

---

**10.** As support for this proposition, the *Putman* court pointed to a number of cases within its jurisdiction that had recognized harm to reputation as a valid collateral consequence in situations other than those involving domestic vio-

lence restraining orders that precluded dismissal of a case as moot.

**11.** In support of its view, the *Putman* court relied on the following cases:

ly, the Putnam court held that the former husband's case was not moot and remanded the case "for consideration of the merits." *Id.* at 1266.

A number of other jurisdictions have adopted "collateral consequences" as an exception to the mootness doctrine. Of particular relevance to the instant case (due to its similar factual background) is a case from the Ohio Court of Appeals, *Wilder v. Perna*, 174 Ohio App.3d 586, 883 N.E.2d 1095 (2007). In *Wilder*, the court concluded that an appeal by a father from a restraining order filed by the mother, seeking to protect the parties' minor child, was not rendered moot by the restraining order's expiration "because it [was] reasonably possible that adverse collateral consequences may occur." 883 N.E.2d at 1099. Specifically, the *Wilder* court—quoting *Putman*—held that:

> The threat of reputation[al] harm is particularly significant in this context because domestic violence restraining orders will not issue in the absence of the showing of a threat of violence. Thus, inasmuch as we previously have recognized the importance of reputation damage as a collateral consequence in other contexts, we see no reason not to do so here, for *being the subject of a court order intended to prevent or stop domestic violence may well cause harm to, the reputation and legal record of the defendant.*
>
> Moreover, ... domestic violence restraining orders have other collateral legal disabilities for their subjects. Once filed, they are available to agencies investigating

future allegations involving the same family, and a trial judge making a future custody determination also reasonably might consider the issuance of a domestic violence restraining order in making that sensitive decision. *Thus, in the sensitive and often explosively litigated context of family dysfunction and dissolution, there is a reasonable possibility that a domestic violence restraining order will have prejudicial collateral legal consequences for its subject, even after its expiration.* Accordingly, the subject of an improperly rendered domestic violence restraining order is likely to benefit from the vacatur of that order, and dismissal of his or her appeal as moot solely on the basis of that order's expiration is improper.

*Id.* (quoting *Putman*, 900 A.2d at 1262–63)(emphases added) (ellipses omitted). In other words, the *Wilder* court, like the *Putman* court, determined that there was a reasonable possibility that an expired domestic violence restraining order would have collateral consequences to the appellants' reputation and legal record "because domestic violence restraining orders will not issue in the absence of the showing of a threat of violence." *Id.* Inasmuch as the *Wilder* court determined that the appeal was not moot, it "proceed[ed] to address the merits of the appeal." *Id.*

Based on the foregoing, we are persuaded by the line of cases that have adopted the collateral consequences exception to the mootness doctrine in cases involving domes-

---

*Roark v. Roark*, 551 N.E.2d 865, 868–69 (Ind. App.1990) (noting "potentially devastating" collateral consequences for parent of expired "child in need of services" order, including impacts on future presentence investigations, in-court impeachments and child custody determinations); *Piper v. Layman*, ... 726 A.2d 887[, 891] ([Md.]1999) ("expiration of the protective order does not automatically render the matter moot" because of "[h]eightened public awareness and sensitivity to the existence of domestic violence, as well as legitimate public contempt for abusers" and enhanced technology for information dissemination); *Wooldridge v. Hickey*, ... 700 N.E.2d 296[, 298] ([Mass. App.Ct.]1998) (appeal from abuse prevention order not rendered moot by order's expiration because of its collateral consequences, including effect in future bail proceedings and other

"stigma"); *Smith v. Smith*, ... 549 S.E.2d 912[, 914] ([N.C.Ct.App.]2001) (expired domestic violence protective order not moot because of "'collateral legal consequences'" such as consideration in custody determination and "non-legal collateral consequences" such as reputation[al] harm); *James v. Hubbard*, 21 S.W.3d 558, 560 (Tex.App.2000) ("[a]lthough expired temporary protective orders and restraining orders have been considered moot, none of these cases has carried the same social stigma as a protective order granted based on a finding of family violence"); *In re Interest of H.Q.*, ... 449 N.W.2d 75[, 77–78] ([Wis.Ct. App.]1989) (expired child abuse protective order not moot because of possible effect on custody determination in impending divorce). *Putman*, 900 A.2d at 1264 (footnote omitted).

tic violence TROs where there "is a reasonable possibility that prejudicial collateral consequences will occur" as a result of the entry of the TRO. We, therefore, explicitly adopt— as has the ICA—the collateral consequences exception to the mootness doctrine in this jurisdiction. Accordingly, we now examine its application in the context of this case.

■ The ICA reviewed the collateral consequences exception in light of the facts of the case at bar and held:

> Father claims generally that proceedings related to custody and visitation of [Minor] may be affected by the issued TRO. He also claims reputational harm from the TRO and the related findings. At this point, [Minor] is no longer a minor and Father's claims that he will suffer negative collateral consequences are too speculative to show that he will suffer substantial continuing collateral consequences from the September 23, 2005 TRO.

SDO at 4. Father generally challenges the ICA's holding, contending that the ICA's "remedy regarding issue preclusion and vacating the TRO orders is not meaningful enough because the fact remains the TRO orders were issued and the vacating was not done on the merits."

In Hawai'i, a family court TRO cannot be entered without a finding "that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent." HRS § 586–4(c). Moreover, the family court's issuance of the TRO in the instant case was accompanied by COLs, which stated, *inter alia*, that "*[Father] did physically harm, injure[ ] or assault[ ] [Minor].*" (Emphasis added.) Accordingly, the relevant inquiry in this case is whether it is "*reasonably possible* " that the unreviewed findings and conclusions of the family court, *i.e.*, that Father is a child abuser, will cause reputational or other harm to Father.

The issue whether the entry of a family court TRO against an individual harms that person's reputation is an issue of first impression in this jurisdiction; however, our decision in *State v. Bani*, 97 Hawai'i 285, 36 P.3d 1255 (2001), provides some guidance in determining what constitutes reputational harm.[12] In *Bani*, we were faced with the issue whether Hawaii's sex offender registration and notification statute was constitutional. *Id.* at 286, 36 P.3d at 1256. In holding the statute unconstitutional, the *Bani* court reasoned that the statute's public notification provisions were "likely to cause irreparable harm to Bani's reputation and professional life, employment opportunities, association with neighbors, and choice of housing." *Id.* at 296, 36 P.3d at 1266. Specifically, we held that the statute's public notification provisions: (1) implied that Bani "was potentially dangerous, thereby undermining his reputation and standing in the community"; (2) could result in "[p]otential employers and landlords . . . foreseeably be[ing] reluctant to employ or rent to Bani once they learn of his status as a 'sex offender' "; and (3) could adversely affect Bani's "personal and professional life, employability, associations with neighbors, [and] choice of housing." *Id.* at 294–96, 36 P.3d at 1264–66 (citations omitted). Additionally, we reasoned that "public disclosure may encourage vigilantism and may expose the offender to possible physical violence." *Id.* at 291–92, 36 P.3d at 1261–62 (footnote omitted). In so reasoning, we relied on *Bohn v. Dakota County*, 772 F.2d 1433 (8th Cir.1985), for the analogous proposition that there was "a protectable interest in reputation where the stigma of being identified as a child abuser was tied to the protectable interest in privacy and autonomy of family relationships." [13] *Bani*, 97 Hawai'i at

---

12. We have previously recognized the importance of reputational damage in other contexts, as well. *See, e.g., Kekona v. Abastillas,* 113 Hawai'i 174, 181, 150 P.3d 823, 830 (2006) (holding that the proper standard of proof for a civil fraudulent transfer proceeding was the clear and convincing standard of proof inasmuch as a finding of liability for a fraudulent transfer produces reputational harm that should not be inflicted absent that degree of proof); *Gonsalves v. Nissan*

*Motor Corp.,* 100 Hawai'i 149, 171, 58 P.3d 1196, 1218 (2002) (recognizing that the tort of defamation protects the interest of reputation). *See also Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976) (holding that harm to reputation coupled with some more tangible interest is sufficient to invoke the Due Process Clause).

13. According to the court in *Bohn,* Mr. Bohn

296, 36 P.3d at 1266 (citing *Bohn*, 772 F.2d at 1436 n. 4).

Although the TRO issued against Father is, admittedly, less serious than Bani's conviction as a sex offender, the TRO was issued by the family court based upon its express ruling that "[Father] did physically harm, injure[ ] or assault[ ] [Minor]." Such ruling implies that Father is a child abuser and is, therefore, "potentially dangerous, thereby undermining his reputation and standing in the community." *Id.* at 294, 36 P.3d at 1264. Additionally, unlike Bani, the issuance of the TRO against Father did not require him to register in a public database; however, the TRO, once issued, became part of the public record. As such, there is a reasonable possibility that "[p]otential employers and landlords [might be] reluctant to employ or rent to [Father] once they learn of his status as a ['child abuser']." *Id.* at 295, 36 P.3d at 1265. Indeed, pursuant to HRS chapter 586, any TRO issued under such chapter must be copied to the appropriate law enforcement agency, HRS § 586-10 (2006), and reported to the department of human services for investigation, HRS § 586-10.5 (2006). Thus, the issuance of the TRO could also adversely affect Father's "personal and professional life, employability, associations with neighbors, [and] choice of housing." *Bani*, 97 Hawai'i at 296, 36 P.3d at 1266.

Accordingly, there is a "reasonable possibility" that the family court's issuance of the

TRO against Father, which was based upon its findings and conclusions that Father abused his daughter, will cause harm to Father's reputation. Consequently, we conclude that Father's appeal falls within the collateral consequences exception to the mootness doctrine. We, therefore, vacate the ICA's judgment on appeal and remand this case to the ICA for consideration of the merits of Father's appeal.

We are, indeed, cognizant that doing so may be to Father's detriment inasmuch as the TRO, FOFs, and COLs will be "reinstated" and that the underlying case will not be dismissed as previously instructed by the ICA. As such, if Father pursues custody of Minor-sister as he insists he will, it is reasonably possible that the TRO, FOFs, and COLs that Father abused Minor could have prejudicial legal consequences to Father. Consequently, allowing the ICA's decision to stand would be beneficial, at least in part, to Father inasmuch as the vacation and dismissal would effectively nullify the legal effects of the TRO, FOFs, and COLs. However, the ICA's solution to dismiss the underlying action so as to prevent the subject documents "from spawning any legal consequences," SDO at 5 (citation and internal quotation marks omitted), fails to take into account the fact that the documents themselves will remain in the court's case file and continue to be a matter of public record. *See* HRS § 606-4 (1993) and Rule 6 of the Rules of the

forcibly interceded to break up a fight between his two sons, one of whom then ran to a neighbor's house as a result. The incident prompted an investigation by the Dakota County Department of Social Services [hereinafter, the Department], which concluded that there was "substantial evidence" of child abuse by the Bohns. Although the Bohns disputed this conclusion, the Department assigned a child protection worker to the case ... and the social worker met with the Bohns and their children repeatedly in an attempt to remedy the presumed problems stemming from the alleged child abuse.
772 F.2d at 1434-35. The Bohns, through a variety of legal and political avenues, "attempted to clear the record of the[ ] charges, but their efforts were generally ineffective." *Id.* at 1435. Thus, the Bohns filed an action in federal district court arguing, *inter alia*, that "deficient administrative procedures for contesting or appealing a finding of child abuse violate the fourteenth

amendment." *Id.* at 1434. Although the *Bohn* court ultimately determined that the Bohns received sufficient due process, it first addressed whether the Bohns had a protectable liberty interest at stake so as to trigger a due process analysis. *Id.* at 1435-36. Specifically, the *Bohn* court noted that:

The stigma Mr. Bohn suffers as a reported child abuser undoubtedly has eroded the family's solidarity internally and impaired the family's ability to function in the community. In light of these clear adverse effects on familial integrity and stability, we find that Mr. Bohn's reputation is a protectible [sic] interest. Because this stigma strikes so directly at the vitality of the family, we find the reputation interest at stake to be clearly distinguishable from [other cases in which the] record of petty crimes was tied to no other protectible [sic] interest.

*Bohn*, 772 F.2d at 1436 n. 4.

Circuit Court of the State of Hawai'i (RCCH).

Under HRS § 606–4, the "clerks of the supreme, intermediate appellate court, circuit, and district courts shall have custody of all records ... pertaining to their respective courts." As the custodian of records, all court clerks are bound by RCCH Rule 6, which was promulgated by the supreme court pursuant to the responsibility delegated to it under HRS § 602–5.5(b) (Supp.2007).[14] The rule states in relevant part that "[t]he clerk *shall permit no pleading or paper to be taken from his custody [i.e., removed from the record]* except as ... ordered by the judge." (Emphasis added.) Thus, although the subject documents have been ordered vacated and the underlying case dismissed by the ICA, the physical file will not be destroyed and will remain available and subject to inspection and copying. Indeed, as this court has observed in *In re Estate of Campbell,* 106 Hawai'i 453, 106 P.3d 1096 (2005), "the public generally has the right, established by the common law, to inspect and copy ... judicial records." *Id.* at 463, 106 P.3d at 1106 (citation, internal quotation marks, brackets, and original ellipsis omitted).

It is apparent from Father's briefs and application that the legal ramifications of the TRO case and related documents are not the focus of his appeal. He is clearly seeking a review of the merits of his appeal, hoping to "clear his name" as he firmly believes he did not abuse Minor, but was simply attempting to discipline his child as he believes is his constitutional right as a parent.

## IV. *CONCLUSION*

Based on the foregoing, we adopt the collateral consequences exception to the mootness doctrine in this jurisdiction and hold that, because there is a reasonable possibility that the family court's issuance of the TRO against Father will cause harm to Father's reputation, we vacate the ICA's June 23, 2008 judgment on appeal and remand the case to the ICA with instructions to address the merits of Father's case. *See Pelosi v.*

*Wailea Ranch Estates,* 91 Hawai'i 478, 486, 985 P.2d 1045, 1053 (1999) (remanding case to the ICA for reconsideration in light of this court's holding).

## Concurring Opinion by ACOBA, J.

I agree with Chief Justice Moon that the judgment of the Intermediate Court of Appeals (ICA) should be vacated and the case remanded to the ICA with instructions to address the merits of the petition of Petitioner/Defendant–Appellant Chris L. Lethem (Father). *See* majority opinion at 11, 193 P.3d at 849. I am also in agreement that the collateral consequences exception to the mootness doctrine is accurately applied to the facts of this case. *See id.* at 6–11, 193 P.3d at 844–49. However, the limitations that the majority opinion purports to place on the public interest exception to the mootness doctrine are of concern. *See id.* at 6–7, 193 P.3d at 844–45. Our cases have not indicated that the exception should be interpreted so narrowly, and, therefore, I write separately to point out that this case may properly fall under the public interest exception, as well as the collateral consequences exception, to the mootness doctrine.

### I.

The public interest exception was first recognized in this court's jurisprudence in *Johnston v. Ing,* 50 Haw. 379, 441 P.2d 138 (1968). In *Johnston,* the court outlined three criteria relevant to the determination of whether a particular case falls under the exception: (1) "the public or private nature of the question presented"; (2) "the desirability of an authoritative determination for future guidance of public officers"; and (3) "the likelihood of future recurrence of the question." *Id.* at 381, 441 P.2d at 140. The public interest exception has continued to be applied in subsequent cases, sometimes melded with the observation that similar cases were likely to become moot thereby escaping review, and more recently, as a distinct exception. *See, e.g., Kaho'ohanohano v. State,* 114 Hawai'i

---

14. HRS § 602–5.5(b) provides in relevant part that "the supreme court shall determine the care, custody, and disposition of all judiciary case, fiscal, and administrative records."

302, 333–34, 162 P.3d 696, 727–28 (2007); *Okada Trucking Co., Ltd. v. Bd. of Water Supply,* 99 Hawai'i 191, 195–98, 53 P.3d 799, 803–06 (2002); *Life of the Land v. Burns,* 59 Haw. 244, 580 P.2d 405 (1978). Because the mootness doctrine is a self-imposed, prudential limitation on this court's powers, the public interest exception is significant in that it permits this court to resolve important constitutional questions and other matters of public interest, and to establish clear rules of conduct in such matters. *See United Pub. Workers v. Yogi,* 101 Hawai'i 46, 60–61, 62 P.3d 189, 203–04 (2002) (Acoba, J., concurring); *see also* Avis K. Poai, *Hawaii's Justiciability Doctrine,* 26 U. Haw. L.Rev. 537, 551–52, 572–74 (2004) (advocating a flexible approach to justiciability in order to allow access to justice and to allow the court to give guidance on important public matters).

There appeared for a time to be confusion as to whether the public interest exception was distinct from the "capable of repetition, yet evading review" exception. *See Yogi,* 101 Hawai'i at 58–62, 62 P.3d at 201–05 (Acoba, J., concurring); *see also* Poai, *Hawaii's Justiciability Doctrine,* 26 U. Haw. L.Rev. at 549–52 (recognizing that "Hawai'i cases have not settled on a concrete application of these two exceptions[ ]"). However, this court recently confirmed that the public interest exception, which embodies the three elements outlined in *Johnston,* exists separate and apart from the "capable of repetition, yet evading review" exception. *See, e.g., Doe v. Doe,* 116 Hawai'i 323, 327, 172 P.3d 1067, 1071 (2007); *Kaho'ohanohano,* 114 Hawai'i at 333, 162 P.3d at 727.

## II.

The majority properly recognizes the public interest exception as distinct, and analyzes it as such. Respectfully, however, the majority adopts a far too narrow definition of "public" in applying the first prong of the three-pronged public interest test. *See* majority opinion at 6–7, 193 P.3d at 844–45. The majority finds that "the question presented is of a private nature." *Id.* at 7, 193 P.3d at 845. Therefore, it eschews application of the public interest exception to Father's appeal on the ground that "it fails to

meet the first prong of the public interest exception"; and thereby affirms the ICA's determination that "Father's appeal 'does not involve questions that affect the public interest.'" *Id.* at 7, 193 P.3d at 845 (quoting SDO at 3).

This restrictive view of the public interest exception overlooks the purposes behind the exception, and in particular disregards our recent opinion in *Doe. Doe* involved a dispute between a child's grandparents and mother over visitation rights pursuant to HRS § 571–46.3. *Doe,* 116 Hawai'i at 327, 172 P.3d at 1071. While we found that "the underlying proceedings are, at bottom, a private battle between Mother and Grandparents over whether Grandparents' access to Child is in Child's best interest," we recognized that the family court's invalidation of the visitation statute presented a matter of wide public concern because "the family court's ruling stands to affect the fundamental rights of many Hawai'i families." *Id.*

Similarly, the underlying facts in this case, of a civil dispute between Respondent/Plaintiff–Appellee Lily E. Hamilton and Father over Father's right to discipline and to participate in the raising of his children, involve a private matter. *See* majority opinion at 2, 2–3, 193 P.3d at 840, 840–41. However, the central issue presented on appeal is whether a parent has a right to the parental discipline defense in Temporary Restraining Order (TRO) proceedings. *See id.* at 3, 193 P.3d at 841. This question is not merely "personal to Father," as the majority contends, *id.* at 6, 193 P.3d at 844, but implicates the broader constitutional right to raise one's children, manifestly a matter of public concern to Hawai'i and its families. *See, e.g., In re Doe,* 99 Hawai'i 522, 532–34, 57 P.3d 447, 457–59 (2002) (affirming parents' "substantive liberty interest in the care, custody, and control of their children" under the due process clause of the Hawai'i constitution). As argued by Father, this issue implicates "the fundamental rights of many Hawai'i families ... specifically given the conflict between a parent applying for a HRS [chapter] 586 *ex parte* TRO, on behalf of a minor, based on the other parent exercising [his or her] parental rights to discipline ... [his or her]

child." But under the majority's rationale, a case could be dismissed as falling outside the public interest exception because the facts of the case make it personal to the parties involved. Where fundamental constitutional rights are at issue, however, the public interest exception is entirely appropriate to apply inasmuch as the purpose of recognizing such an exception is to provide needed guidance on fundamental issues of public importance, even though arising in the context of a private dispute.

Because the majority disposed of this issue based on the first prong of the exception, the opinion does not address the remaining two prongs. Application of those prongs to the facts of this case further illustrates the importance of allowing an exception to the mootness doctrine as in the public interest in this case. As to "the desirability of an authoritative determination for future guidance of public officers," our family courts would undoubtedly benefit from a decision on the merits as to whether a parental discipline defense is appropriate in TRO proceedings. As for "the likelihood of future recurrence of the question," it is highly likely, if not certain, that the fundamental question of a parent's right to discipline and participate in the raising of his or her child will arise in the context of future TRO proceedings.[1] Just as the family court in *Doe* found the grandparent visitation statute to be unconstitutional, thereby affecting the rights of other families in similar future proceedings, here the family court found that a parental discipline defense is not appropriate in TRO proceedings, precluding its use by future defendants, and thereby affecting the parental rights of future litigants. A TRO is a serious limitation on a parent's fundamental rights, and future parties, counsel and our courts must have direction as to the circumstances that warrant the imposition of such a sanction. The public interest exception to the mootness doctrine, accordingly, is also germane to this case.

---

1. Although, as previously mentioned, the public interest exception is distinct from the capable of repetition, but evading review exception, the problem of a likely recurrence is compounded here by the fact that TROs are usually too short in duration to be capable of appellate review, absent an exception such as the public interest exception. *See* majority opinion at 6, 193 P.3d at 844 ("We believe that a TRO, by its very nature, will always evade review because it would, as it did here, expire within the initial ninety-day term.").