**Electronically Filed
Intermediate Court of Appeals
CAAP-21-0000014
28-JUN-2022
07:52 AM
Dkt. 46 SO**

NO. CAAP-21-0000014

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

LIAM BEALE, Petitioner-Appellee, v.
ROBERT KONRAD ROOS, Respondent-Appellant

APPEAL FROM THE FAMILY COURT OF THE SECOND CIRCUIT
(FD-DA NO. 20-1-0421)

SUMMARY DISPOSITION ORDER
(By: Ginoza, C.J., and Leonard and Wadsworth, JJ.)

Respondent-Appellant Robert Konrad Roos (**Roos**) appeals from the September 21, 2020 Order for Protection entered in favor of Petitioner-Appellee Liam Beale (**Beale**) and against Roos by the Family Court of the Second Circuit (**Family Court**).[1] Pursuant to Hawaiʻi Rules of Appellate Procedure Rule 4(a)(3), Roos's notice of appeal is also deemed to appeal the Family Court's "Order Denying Motion for Reconsideration; Memorandum in Support of Motion for Reconsideration; Affidavit of Defendant Exhibits 1-8."

On appeal, Roos contends that the Family Court erred in granting a temporary restraining order and the Order for Protection and in denying Roos's motion for reconsideration because Beale and Roos were not "household or family members" as defined by Hawaii Revised Statutes (**HRS**) § 586-1, quoted infra.[2]

---

[1] The Honorable Adrianne N. Heely presided.

[2] Roos raises several related points of error, which have been restated and condensed for clarity. Because we find the above contention dispositive (see infra), we do not reach Roos's contention that the Family Court erred in denying the motion for reconsideration. For the same reason, we do not reach Roos's contention that the Family Court erred in denying his "request to produce relevant evidence through a witness."

Upon careful review of the record, and the brief submitted by Roos,[3] and having given due consideration to the arguments advanced and the issues raised, we reverse the Order for Protection for the reasons set forth below.

## I.  Background

On September 14, 2020, Beale filed an ex parte petition for a temporary restraining order (**TRO**) against Roos (**Petition**), pursuant to HRS Chapter 586.  In the Petition, Beale described his relationship to Roos as a "roommate."  Beale described the alleged "recent acts of domestic abuse or threats of domestic abuse" as follows:

> 2 weeks ago- [Roos] had been out all day.  When he came home with his girlfriend he was intoxicated and playing loud music at 11 pm.  I told [Roos] to turned [sic] down his music.  [Roos] got mad and aggressive he yelled at me telling me "don't tell him what to do and he can do what he wants."  I asked him nicely again to turn the music down and he refused.  He got in my face screaming to me and getting mad.  I called the police and [Roos] was acting cool.  Once the police left he continued to yell and swear outside.
>
> For the past month [Roos] has gotten in my face, he refuses to leave because he has not paid rent, he threaten [sic] to punch me, he comes home drunk and when I try and speak to him nicely he will yell at me and get in my face aggressively.  He calls me a "little bitch, asshole and motherfucker."

On September 14, 2020, the Family Court issued a TRO pursuant to HRS § 586-4(c) (2018),[4] which, among other things,

---

[3]  Beale did not submit an answering brief.

[4]  HRS § 586-4(c) provides:

> The family court judge may issue the ex parte temporary restraining order orally, if the person being restrained is present in court.  The order shall state that there is probable cause to believe that a past act or acts of abuse have occurred, or that threats of abuse make it probable that acts of abuse may be imminent.  The order further shall state that the temporary restraining order is necessary for the purposes of: preventing acts of abuse or preventing a recurrence of actual domestic abuse and ensuring a period of separation of the parties involved.  The order shall also describe in reasonable detail the act or acts sought to be restrained.  Where necessary, the order may require either or both of the parties involved to leave the premises during the period of the order; may also restrain the party or parties to whom it is directed from contacting, threatening, or physically abusing the

(continued...)

2

ordered Roos to immediately leave the subject residence.[5] Police subsequently escorted Roos off the property.

On September 21, 2020, the Family Court held a hearing requiring Roos to show cause why an order for protection should not continue against him (OSC hearing). Both parties were self-represented at the OSC hearing and both testified. At the outset, Roos noted "big discrepancies" in the Petition and denied the allegations.

Beale testified that he and Roos lived "in the same building together." Beale stated that his parents are the landlords and Beale served as the "property manager or caretaker[.]" Beale further testified that Roos had a "verbal agreement" with the "past property manager" and had not paid rent since the beginning of the month (though the hearing transcript is somewhat unclear on the latter point). Beale stated: "So we asked [Roos] on May 28, we (inaudible) him to leave. He did not comply with this notice."[6]

---

[4] (...continued)
applicant's family or household members; and may enjoin or restrain both parties from taking, concealing, removing, threatening, physically abusing, or otherwise disposing of any animal identified to the court as belonging to a household, until further order of the court. The order shall not only be binding upon the parties to the action, but also upon their officers, agents, servants, employees, attorneys, or any other persons in active concert or participation with them. The order shall enjoin the respondent or person to be restrained from performing any combination of the following acts:

    (1)    Contacting, threatening, or physically abusing the protected party;

    (2)    Contacting, threatening, or physically abusing any person residing at the protected party's residence;

    (3)    Entering or visiting the protected party's residence; or

    (4)    Taking, concealing, removing, threatening, physically abusing, or otherwise disposing of any animal identified to the court as belonging to a household, until further order of the court.

[5]    The Honorable John J. Breen entered the TRO.

[6]    During this time period, an eviction moratorium was in place due to COVID-19.

Roos testified that, among other things, he and Beale were "not living together as [Beale] stated earlier" and "[t]here are two different houses on the premises."

Following the parties' testimony, the Family Court found in part: "[Y]ou folks live kinda together in the same area and loft or the garage now, but the same area of your [*i.e.*, Beale's] parents' home." The Family Court further stated: "[Y]ou [(Beale)] don't feel safe with [Roos] around. . . . I can grant the request for the protective order. I heard credible evidence from [Beale]." (Formatting altered.)

Roos then raised an objection as to the allegation on page two, paragraph G of the Petition, which stated:

[✓] we are now living together.
    (Does not include those who are, or were, adult
    roommates or cohabitants only by virtue of an economic
    or contractual affiliation[])]

The Family Court clarified that Roos was "arguing that you guys are not family or household members" and noted his objection, but stated:

[H]earing the testimony I will overrule it and find that you are living together. Um, you folks are adult [sic] or cohabitants, um, by virtue of a contractual affiliation.

I heard that you were previously living there on a oral rental -- oral agreement. That's a contractual, but it's -- recommended that if you have -- so it's -- it's not an oral one. You have a written one now. So do you have it --

So even more so this allowed. I will find that you folks are family household members or cohabitants living in the same area.

I find that his allegation on page two, paragraph G [of the Petition] is true.

The Family Court also found the allegation in the Petition regarding "recent acts of domestic abuse or threats of domestic abuse" to be true. The Family Court "grant[ed] the request for the protective order[,]" adopting the terms stated in the TRO. The Order for Protection was filed following the hearing and put in place for two years.

## II.  Discussion

Roos contends that the Family Court erred in granting the TRO and the Order for Protection because Beale and Roos were not "household or family members" as defined by HRS § 586-1.

We apply the following standard of review to Roos's contention:

> Generally, the family court possesses wide discretion in making its decisions and those decisions will not be set aside unless there is a manifest abuse of discretion.  Thus, [an appellate court] will not disturb the family court's decisions on appeal unless the family court disregarded rules or principles of law or practice to the substantial detriment of a party litigant and its decision clearly exceeded the bounds of reason.

Fisher v. Fisher, 111 Hawaiʻi 41, 46, 137 P.3d 355, 360 (2006) (quoting In re Doe, 95 Hawaiʻi 183, 189-90, 20 P.3d 616, 622-23 (2001)).

The Family Court entered the Order of Protection pursuant to HRS § 586-5.5.  HRS § 586-5.5(a) (2018) provides in relevant part:

> **§ 586-5.5. Protective order; additional orders**. (a) If, after hearing all relevant evidence, the court finds that the respondent has failed to show cause why the [temporary restraining] order should not be continued and that a protective order is necessary to prevent domestic abuse or a recurrence of abuse, the court may order that a protective order be issued for a further fixed reasonable period as the court deems appropriate[.]

(emphasis added); see also HRS § 586-3(a) (2018) ("There shall exist an action known as a petition for an order for protection in cases of domestic abuse.")

In turn, HRS § 586-1 (2018) defines "domestic abuse" as:

> (1)    Physical harm, bodily injury, assault, or the threat of imminent physical harm, bodily injury, or assault, extreme psychological abuse, coercive control, or malicious property damage between family or household members; or
>
> (2)    Any act which would constitute an offense under section 709-906 [i.e., Abuse of Family or Household Members], or under part V or VI of chapter 707 committed against a minor family or household member by an adult family or household member.

5

(Emphases added.)

"Family or household member":

(1)     Means spouses or reciprocal beneficiaries, former spouses or former reciprocal beneficiaries, persons who have a child in common, parents, children, persons related by consanguinity, persons jointly residing or formerly residing in the same dwelling unit, and persons who have or have had a dating relationship; and

(2)     <u>Does not include those who are, or were, adult roommates or cohabitants only by virtue of an economic or contractual affiliation</u>.

HRS § 586-1 (emphasis added); <u>see</u> HRS § 709-906(19) (Supp. 2020) (setting forth the same definition of "family or household member" for purposes of the criminal offense of Abuse of Family or Household Members); <u>see also</u> HRS § 571-2 (defining "family violence" as certain acts by a "family or household member").

We conclude that the Family Court abused its discretion in granting the Order for Protection after finding that Beale and Roos were "adult [sic] or cohabitants . . . by virtue of a contractual affiliation."  HRS § 586-5.5 authorizes the issuance of a protective order when necessary to prevent domestic abuse or a recurrence of such abuse, defined by HRS § 586-1 as abuse between family or household members.  As set forth above, HRS § 586-1 explicitly excludes "those who are, or were, adult roommates or cohabitants only by virtue of an economic or contractual affiliation" from the definition of family or household member.

There is no evidence in the record to support a reasonable inference or conclusion that the parties' relationship was one other than a contractual or economic relationship.  Indeed, the Family Court expressly concluded that the relationship was a "contractual affiliation."  Because Beale and Roos were not family or household members as defined by HRS § 586-1, the Protective Order was not warranted under HRS § 586-5.5.  Accordingly, the Family Court abused its discretion in issuing the Order for Protection.[7/]

---

[7/]     We further conclude that Roos's challenge to the September 14, 2020 TRO, which has long since expired, is moot.  Roos has shown no reasonable
(continued...)

For these reasons, the Family Court's September 21, 2020 Order for Protection is reversed.

DATED:  Honolulu, Hawaiʻi, June 28, 2022.

On the brief:

Jordan K. Chee and
Yukari Murakami,
(Legal Aid Society of Hawaiʻi)
for Respondent-Appellant.

/s/ Lisa M. Ginoza
Chief Judge

/s/ Katherine G. Leonard
Associate Judge

/s/ Clyde J. Wadsworth
Associate Judge

---

[7/]  (...continued)
possibility that issuance of the short-lived TRO, which was based on the probable cause standard set forth in HRS § 586-4(c) and superseded by the September 21, 2020 Order for Protection, would cause him reputational harm or any other collateral consequence sufficient to trigger an exception to the mootness doctrine.  See Hamilton ex rel. Lethem v. Lethem, 119 Hawaiʻi 1, 9-10, 193 P.3d 839, 847-48 (2008).  We thus lack subject matter jurisdiction to decide this issue.