No. 19,014.

COLORADO RACING COMMISSION, ET AL. *v.*
COLUMBINE KENNEL CLUB, INC.
(348 P. [2d] 954)

Decided February 1, 1960.

Mr. DUKE W. DUNBAR, Attorney General, Mr. FRANK

E. HICKEY, Deputy, Mr. JOHN W. PATTERSON, Assistant, for plaintiffs in error.

Mr. WILLIAM B. PAYNTER, Mr. RICHARD B. PAYNTER, Mr. EARL G. EBY, for defendant in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

WE will refer to plaintiffs in error as the Commission and to defendant in error as Columbine.

Columbine submitted an application to the Commission seeking a license to operate a greyhound race track between the cities of Brush and Fort Morgan in Morgan county, Colorado. A hearing on said application was held in the court house at Fort Morgan on November 26, 1958, at which time a number of witnesses were heard by the Commission. A majority of these witnesses favored granting the license but the record discloses that most of them were interested financially in Columbine either as officers, directors, stockholders or employees; or in a most unusual contract between Columbine and the Brush Racing Association, operator of an existing horse racing track at Brush. Several petitions containing signatures of approximately two hundred persons opposing the granting of the application and asking the Commission to deny the same, were introduced.

The Commission denied the application by resolution adopted on December 15, 1958. The action of the Commission was communicated to Columbine by letter signed by the Executive Secretary of the Commission. The body of the letter was as follows:

"The Colorado Racing Commission has met this day for the purpose of considering your application for license to operate a race track for greyhound racing and all members of the commission have considered the complete file in this regard.

"THE COMMISSION FINDS THAT there are 238 racing days licensed in and near Denver, Colorado at five different race tracks all of which are patronized by Denver area people; therefore, there is approximately 1 race day per 3,000 persons in such area. In other large metropolitan areas the ratio is 1 racing day to approximately 18,000 persons.

"The Commission further finds that there was considerable protest from the inhabitants of the area of Fort Morgan and Brush in respect to the granting of your application.

"After considering the general sentiments of the communities involved and the character and population of such area, and further considering the best interests of the State and racing industry THE COMMISSION DOES HEREBY DENY THE APPLICATION."

In appropriate proceedings in the nature of certiorari the district court reversed the order of the Commission, ordered the license to issue and entered judgment accordingly. The Commission is here by writ of error directed to the judgment of the district court.

In November 1954 this court decided the case of *Cloverleaf Kennel Club v. Racing Commission et al.,* 130 Colo. 505, 277 P. (2d) 226. The majority opinion in that case held that under the statute as it then existed the Commission could deny a license only on the grounds specified therein. The dissenting opinion in that case, concurred in by three justices, was based upon the view that the statute required the Commission to deny applications on the grounds specified, but vested a wide discretion in the Commission to deny applications on grounds other than those specifically prohibited.

The General Assembly which convened in January 1955, motivated by the opinion in the Cloverleaf case, drastically amended the Racing Act. A comparison of the statute in effect at the time the Cloverleaf case was decided, and as amended in 1955, leads inescapably to the conclusion that the primary purpose of the exten-

sive changes made in the law, was to confer upon the Racing Commission a broad discretionary power in granting or denying applications for race meets, which the minority of the court in the Cloverleaf case felt existed under the law prior to amendment.

■ We have examined the complete record before the Commission and find ample evidence to sustain the conclusion that "there was considerable protest from the inhabitants of the area of Fort Morgan and Brush" in respect to granting the application. There is competent evidence to support the conclusion that the best interests of the racing industry would be adversely affected by granting the license.

■ The "findings" of the Commission as set forth in the letter hereinabove quoted leave much to be desired. Were it not for the presence in the record of evidence of a very unusual situation, it is not unlikely that the findings would be held lacking in that degree of particularity which ordinarily would be required under the opinion of this court in *Geer v. Stathopulos,* 135 Colo. 146, 309 P. (2d) 606.

■ Under the terms of the contract entered into between the applicant Columbine and Brush Racing Association, the former agreed to pay the latter the sum of $7,500.00 per year plus 1% of the pari mutuel "handle" in excess of four million dollars per year. The "consideration," if such it can be called, for the said payments was that the Brush Racing Association would not oppose the issuance of the license to Columbine, but, on the contrary, would advocate the granting thereof. In supporting the application by Columbine, one of the witnesses connected with the Brush Racing Association testified that the latter would have opposed granting a license to Columbine had it not been for the promise of Columbine to make the payments as provided in the contract. These payments were to continue "forever." The contract also provided that Columbine would not conduct dog races at a time when horse races were

scheduled. It was planned that horse races should be held at Brush in the afternoons and the dogs would run at night at the nearby dog track. Thus the Fort Morgan and Brush communities would have a full measure of opportunity for pari mutuel betting. The Commission considered the "best interests" of racing, and of the state, would not be served by granting the license. There being sufficient evidence to support this finding, it should have been upheld by the trial court.

Unquestionably the contract between Columbine and Brush Racing Association is void as being against public policy. Nevertheless it played an important part in controlling the testimony favorable to the granting of the application. We quote the following pertinent language from *Menzel v. Niles Company*, 86 Colo. 320, 281 Pac. 364:

" * * * any contract is against public policy and void, which provides for the sale by an individual of the right, given him with others by legislative enactment, to give or withhold his consent to any project affecting a public interest, and where the giving or withholding of such consent may become the basis of governmental action."

The judgment is reversed and the cause remanded with directions to enter judgment affirming the action of the Commission.