Neal B. NORRIS and Kathleen W. Norris, Plaintiffs-Appellees,

v.

James O. PHILLIPS and Anita Lee Phillips, Defendants-Appellants.

No. 79CA0577.

Colorado Court of Appeals, Div. II.

Dec. 26, 1980.

As Modified on Denial of Rehearing Jan. 22, 1981.

Spiro A. Fotopulos, Denver, for plaintiffs-appellees.

Skelton, Oviatt & O'Dell, Forrest C. O'Dell, Wheat Ridge, for defendants-appellants.

ENOCH, Chief Judge.

This is an appeal by defendants, James and Anita Phillips, from a judgment in favor of plaintiffs, Neal and Kathleen Norris, in the amount of $11,993.50. The case was tried to the court on a complaint that the defendants were in violation of a protective covenant and a personal agreement between the parties. We reverse.

The parties are adjoining landowners in a subdivision of five-acre residential sites in Douglas County known as Travios Filing 2. This subdivision is subject to the following pertinent restrictive covenants:

"2. No business shall be conducted on the premises and no building shall be erected, altered, placed or permitted to remain on any lot other than: (1) Detached, single family dwelling, necessary garage attached or unattached and outbuildings for the purpose of storing or corralling horses. All buildings shall be of new construction. Necessary buildings, corrals, water facilities and other structures for family recreation shall be permitted on any tract. Every effort shall be made to keep such structures attractive and painted and concealed from general view to the extent possible.

. . . .

8. The architectural control committee's approval is expressly required for the erection and maintenance of buildings for livestock.

. . . .

14. No building shall be erected, placed or altered on any residential lot until the construction plans and specifications and the plans showing the location of the structure have been approved by the architectural control committee. In the event the committee or its designated representative fails to approve or disapprove within 30 days after plans, specifications and plot plan have been submitted, or in the event no suit to enjoin the construction has been commenced prior to the completion thereof, approval will not be required and the related covenant shall be deemed to have been fully complied with."

Neal Norris was a member of the architectural control committee and at a meeting of the committee on April 8, 1978, at which James Phillips was present the subject of the construction of a barn by Phillips was discussed. A building plan, but not a site location, was submitted to the committee. A difference between Norris and Phillips arose as to where the barn would be located. Norris, Phillips, one other member of the committee, and Norris' attorney went to the proposed site. Phillips pointed out where he proposed to erect the barn. That site was satisfactory to Norris and this was reported to the committee, which thereupon approved the plans.

On July 8, 1978, defendants submitted a plot plan to the architectural control committee. The architectural control committee reaffirmed its approval of the plans to construct the barn as submitted by defendants. This approval was given over the objection of plaintiffs, who complained that

the plot plan was not in accord with the April 8 agreement on the placement of the barn.

On July 11, 1978, plaintiffs filed this action, specifically alleging that defendants had violated paragraph 2 of the protective covenants in that the defendants had not made every effort to conceal the barn from the general view. On July 14 or 15, 1978, defendants commenced construction of the new barn. A temporary injunction prohibiting defendants from using that barn was issued on August 16, 1978.

After the trial and on April 13, 1979, the trial court dissolved and vacated the preliminary injunction and entered a judgment in the amount of $11,993.50 in favor of plaintiffs. The court based this award of money damages on the breach of covenant by defendants.

Defendants contend that the trial court, rather than making a determination of whether the barn was built in breach of covenant, should have addressed the question of whether the architectural control committee's approval of the barn and its location was made reasonably and in good faith. We agree.

■ Restrictive covenants that require property owners to have building plans approved by an architectural control committee have been recognized as "one method by which guarantees of value and general plan of construction can be accomplished and maintained." *Rhue v. Cheyenne Homes, Inc.*, 168 Colo. 6, 449 P.2d 361 (1969). An architectural control committee acts not only to prevent construction of buildings that would violate a general plan of construction but also acts to assure property owners, through approval of building and site plans, that their plans conform to that scheme. Courts, however, are not required to give complete deference to the determinations of an architectural control committee.

The standard for review of an architectural control committee's decision is set out in *Rhue v. Cheyenne Homes, Inc., supra.* There, an architectural control committee obtained an injunction prohibiting the moving of a 30-year old Spanish style home into a subdivision which contained only modern ranch style or split level homes. In affirming the injunction, the Supreme Court noted however, that "a *refusal* by an architectural control committee to approve plans must be reasonable and made in good faith and must not be arbitrary or capricious." *Rhue, supra* (emphasis added). The question of reasonableness and good faith is also the standard applicable in reviewing the *approval* of plans by an architectural control committee. *Rywalt v. Writer Corp.*, 34 Colo.App. 334, 526 P.2d 316 (1974).

■ Here, the architectural control committee approved the building and site plans of defendants' barn. It did so apprised of plaintiffs' objection that the plans were in breach of the covenants. If plaintiffs are to maintain a suit for breach of covenant, they must do so by alleging that the committee's approval was made unreasonably or in bad faith.[1] As such, the trial court's determination of a breach of covenant, without a determination that the architectural control committee acted unreasonably or in bad faith, was in error.

Defendants also contend that the trial court erred in finding a contract between plaintiffs and defendants and its breach. Again, we agree.

■ The trial court found, and the record supports, that on April 8, 1978, Phillips and Norris orally agreed to a site location of the barn. In return for Phillips' promise to locate the barn at that site, Norris promised to forbear on enforcing paragraph 2 of the covenants.

Plaintiffs are correct in contending that, generally, forbearance is sufficient consideration. *Colorado State Bank v. Rothberg*, 28 Colo.App. 422, 474 P.2d 634 (1970). However, here, as a member of the archi-

---

1. In such a challenge, the architectural control committee is an indispensable party. In that the architectural control committee was dismissed out of this suit and that dismissal has not been appealed, a remand for a determination that the committee acted unreasonably or in bad faith is not possible.

tectural control committee, Norris was obligated to the other property owners in the development to ensure that the restrictive covenants were enforced. His agreement was not limited to a personal right to forbear enforcing paragraph 2 of the covenants, and therefore interfered with his ability to discharge his obligations as a member of the committee.

In *Colorado Racing Commission v. Columbine Kennel Club, Inc.*, 141 Colo. 497, 348 P.2d 954 (1960), the Colorado Supreme Court ruled that:

> " 'any contract is against public policy and void, which provides for the sale by an individual of the right, given him with others by legislative enactment, to give or withhold his consent to any project affecting the public interest, and where the giving or withholding of such consent may become the basis of governmental action.' "

Though this case does not have the governmental enactment and impact requirements of *Columbine*, the rationale of *Columbine* is nevertheless applicable. Therefore, we hold that Norris' barter and sale of his obligation to enforce paragraph 2 of the covenants is void as being against public policy.

■ Arguing that the preliminary injunction was wrongfully entered, defendants contend that the trial court erred in denying their counterclaim for damages incurred as a result of the injunction. The preliminary injunction was entered solely on the basis of a breach of covenant. Our reversal of the trial court's finding of a breach of covenant is not based on a determination of whether there was a breach of covenant, but is rather based on a determination that the trial court did not apply the proper test for determining a breach. As such, we cannot say that the trial court wrongfully entered the preliminary injunction and thus erred in denying defendants' counterclaim.

We have considered defendants' remaining arguments, and find them to be without merit.

Judgment reversed.

COYTE and VAN CISE, JJ., concur.