**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000578
14-JUN-2022
08:01 AM
Dkt. 40 MO**

NO. CAAP-17-0000537 and NO. CAAP-17-0000578

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

JEFFREY S. LINDNER, Plaintiff/Counterclaim Defendant-Appellant,
v.
JOHN A. DURKEE, Individually and as Trustee of the Revocable
Living Trust of John A. Durkee dated April 30, 2003, as amended;
RICHARD WANEK, Defendants/Counterclaimants-Appellees,
and
BOARD OF DIRECTORS OF THE ALIOMANU ESTATES COMMUNITY
ASSOCIATION, Defendant-Appellee,
and
JOHN DOES 1-10; JANE DOES 1-10; DOE CORPORATIONS 1-10; AND DOE
PARTNERSHIPS 1-10, Defendants

APPEAL FROM THE CIRCUIT COURT OF THE FIFTH CIRCUIT
(CASE NO. 5CC141000158)

**MEMORANDUM OPINION**
(By:  Hiraoka, Presiding Judge, Nakasone and McCullen, JJ.)

Aliomanu Estates is a planned community on the island of Kauaʻi.  Plaintiff/Counterclaim Defendant-Appellant Jeffrey S. **Lindner** and Defendants/Counterclaimants-Appellees John A. **Durkee**[1] and Richard **Wanek** each owned lots in Aliomanu Estates.  Lindner

---

[1]    Durkee died on November 6, 2019; Sher L. **Kirkpatrick**, the successor trustee of the Revocable Living Trust of John A. Durkee and the personal representative of Durkee's estate, was substituted for Durkee in this appeal by order entered on April 16, 2021.

owned **Lot 6C**,[2] Durkee owned **Lot 6D**, and Wanek owned **Lot 6E**. Lindner complained that the ocean view from his lot was being blocked by vegetation growing on Durkee's and Wanek's lots.  He sued Durkee, Wanek, and Defendant-Appellee **Board** of Directors of the Aliomanu Estates Community Association.  He appealed from various orders[3] and the **"Final Judgment** in Favor of Defendants and Against Plaintiff"** entered by the Circuit Court of the Fifth Circuit on July 21, 2017.[4]  We consolidated Lindner's appeals.

After briefing was completed Lindner, Durkee, Wanek, and the Board filed various motions.  For the reasons explained below, we:

- grant the Board's April 8, 2019 motion to dismiss, grant Durkee and Wanek's April 12, 2019 joinder, and dismiss Lindner's appeal from the disposition of counts 1 and 2 of the complaint;

- grant the Board's April 13, 2022 renewed motion to dismiss, grant Kirkpatrick's April 20, 2022 joinder, and dismiss Lindner's appeal from the disposition of counts 1 and 2 of the complaint;

- deny Lindner's July 30, 2020 motion to substitute or join parties; and

---

[2]     Lindner did not live on Lot 6C.  He also owned Lot 5, which was part of Aliomanu Estates, and another lot that was makai of, but not part of, Aliomanu Estates.  Neither of those lots was a subject of Lindner's complaint.

[3]     The "various orders" from which Lindner appealed include:

1.     "Order Granting Defendant Board of Directors of the Aliomanu Estates Community Association's Motion for Award of Attorneys' Fees and Costs Filed 4/18/17[,]" entered by the circuit court on June 28, 2017;

2.     "Order Granting Defendants John A. Durkee and Richard Wanek's Joint Motion for An Award of Attorneys' Fees and Costs Filed April 24, 2017[,]" entered by the circuit court on June 22, 2017; and

3.     "Findings of Fact, Conclusions of Law, and Judgment in Favor of Defendants and Against Plaintiff[,]" entered by the circuit court on April 10, 2017;

[4]     The Honorable Kathleen N.A. Watanabe presided.

- vacate in part the Final Judgment and remand to the circuit court for further proceedings.

BACKGROUND

**Procedural History**

Lindner filed the lawsuit below on July 28, 2014.  His complaint alleged that he, Durkee, and Wanek each owned lots in Aliomanu Estates and were members of the Aliomanu Estates **Community Association**.  Each of the lots was subject to the "Declaration of Covenants, Conditions and Restrictions for Aliomanu Estates" (**CC&R**) recorded in the Hawaiʻi **Bureau of Conveyances**.

Lindner complained that the view from his lot was being blocked by vegetation growing on Durkee's and Wanek's lots. Lindner sought: **(1)** a declaration that **(a)** Durkee and Wanek were violating Lindner's "view plane rights" under the CC&R and the Community Association's **Design Committee Rules**, and **(b)** the Board would be bound by the circuit court's determination of whether and to what extent Durkee and Wanek have violated the CC&R and Design Committee Rules; **(2)** mandatory injunctive relief to restore Lindner's "view plane rights" and protect them from future encroachment; and **(3)** an award of damages and costs (against Durkee and Wanek only) for alleged violations of the CC&R and Design Committee Rules.

The Board answered Lindner's complaint.  It did not assert a counterclaim or cross-claims.

Durkee and Wanek answered Lindner's complaint and asserted a counterclaim.  The counterclaim alleged claims for breach of contract, trespass, nuisance, and waste.  Durkee and Wanek did not assert a cross-claim against the Board.

A jury-waived trial was conducted over 9 days between October 2016 and January 2017.  The circuit court entered its "Findings of Fact, Conclusions of Law, and Judgment in Favor of Defendants and Against Plaintiff" (**Findings & Conclusions**) on April 10, 2017.  In June 2017 the circuit court entered orders

awarding attorneys' fees and costs to the Board, Durkee, and Wanek.

On July 21, 2017, the Final Judgment was entered: **(1)** against Lindner on his claims for a declaration that **(a)** Durkee and Wanek were violating his view plane rights and **(b)** the Board would be bound by the declaration; **(2)** against Lindner on his claim for mandatory injunctive relief on his view plane rights; **(3)** against Lindner on his claim for damages and costs against Durkee and Wanek; **(4)** against Lindner and in favor of Durkee ($1,000) and Wanek ($5,000) on the counterclaim for damages; and **(5)** against Lindner and in favor of the Board ($188,440.62) and Durkee and Wanek ($159,295.35) on their respective claims for attorneys' fees and costs.

These appeals followed.

### **Post-Appeal Motions**

In February 2019 Lindner conveyed Lot 6C to Fred Blakeslee Conant, III and Kathleen Warner Conant (collectively, the **Conants**).[5] In April 2019 the Board moved to partially dismiss this appeal as moot because Lindner no longer owned Lot 6C.[6] Durkee and Wanek filed a joinder to the Board's motion, also seeking partial dismissal of the appeal based on mootness.

In July 2020 Lindner filed a motion to substitute or join parties. In October 2017 Durkee conveyed Lot 6D to Sunita **Cummings**, subject to retention of a life estate.[7] In

---

[5] We take judicial notice under Rule 201 of the Hawaii Rules of Evidence of the Apartment Deed recorded in the Bureau of Conveyances, a copy of which was filed in support of the Board's motion to dismiss. We may consider this new evidence because it relates to mootness. Queen Emma Found. v. Tatibouet, 123 Hawaiʻi 500, 507 n.8, 236 P.3d 1236, 1243 n.8 (App. 2010).

[6] The Board's motion pertains only to Lindner's appeal from the disposition of counts 1 (declaratory relief) and 2 (injunctive relief) of his complaint; the Board does not seek dismissal of Lindner's appeal from the disposition of count 3 (damages against Durkee and Wanek only), the order granting attorneys fees and costs to Durkee and Wanek, or the order granting attorneys fees and costs to the Board.

[7] Durkee died on November 6, 2019, terminating his life estate in Lot 6D.

January 2018 Cummings conveyed Lot 6D to herself, as trustee of the Sunita Cummings Revocable Living Trust.[8]  Lindner sought to substitute Cummings for Durkee, or to join Cummings as a defendant-appellee, "because Durkee has passed away and has transferred his interest in his property that was a subject of this appeal to Cummings."

In February 2022 the Conants conveyed Lot 6C to Benny Abruzzo and Sandra Rae Abruzzo (collectively, the **Abruzzos**).[9]  In April 2022 the Board filed a renewed motion for partial dismissal of this appeal.  Kirkpatrick (as successor trustee of the Revocable Living Trust of John A. Durkee and personal representative of Durkee's estate) filed a joinder to the Board's renewed motion, also seeking partial dismissal of the appeal based on mootness.

## STANDARDS OF REVIEW

The statement of the points of error in Lindner's amended opening brief does not contain quotations of any findings of fact or conclusions of law Lindner contends were clearly erroneous or wrong.  A copy of the circuit court's Findings & Conclusions was appended to the amended opening brief, but the statement of points does not reference specific findings or conclusions being challenged.  See Hawaiʻi Rules of Appellate Procedure Rule 28(b)(4)(C).

"[U]nchallenged factual findings are deemed to be binding on appeal, which is to say no more than that an appellate court cannot, under the auspices of plain error, sua sponte revisit a finding of fact that neither party has challenged on appeal."  Okada Trucking Co. v. Bd. of Water Supply, 97 Hawaiʻi 450, 459, 40 P.3d 73, 82 (2002).

---

[8]     We take judicial notice of the conveyance documents recorded in the Bureau of Conveyances, copies of which were attached to Lindner's motion.

[9]     We take judicial notice of the "Apartment Deed" recorded in the Bureau of Conveyances, a copy of which was attached to the Board's renewed motion to dismiss.

Conclusions of law are reviewed de novo under the "right/wrong" standard.  Est. of Klink ex rel. Klink v. State, 113 Hawaiʻi 332, 351, 152 P.3d 504, 523 (2007).  A conclusion of law that is supported by the trial court's findings of fact and reflects an application of the correct rule of law will not be overturned.  Id.  When a conclusion of law presents mixed questions of fact and law, we review it under the "clearly erroneous" standard because the court's conclusions are dependent on the facts and circumstances of each individual case.  Id.

We review "the denial and granting of attorney's fees under the abuse of discretion standard."  Chun v. Bd. of Trs. of the Emps. Ret. Sys. of Haw., 106 Hawaiʻi 416, 431, 106 P.3d 339, 354 (2005) (cleaned up).  "An abuse of discretion occurs if the trial court has clearly exceeded the bounds of reason or has disregarded rules or principles of law or practice to the substantial detriment of a party litigant."  Id. (citation omitted).

## **DISCUSSION**

Lindner's amended opening brief asserts five points of error:

**A.** "The Circuit Court erred in failing to enforce Lindner's view plane rights that were blocked by vegetation on the Durkee and Wanek lots as determined by the [Community Association's] Design Committee in its sole but reasonable discretion";

**B.** "The Circuit Court erred in failing to rule that the [Board] abused its authority by overriding the decision of the . . . Design Committee and is estopped to deny enforcement of the Design Committee's decision";

**C.** "The Circuit Court erred in awarding Durkee or Wanek damages for their Counterclaims";

**D.** "The Circuit Court erred in awarding the [Board] attorneys' fees and costs in the amount of $188,440.62"; and

   **E.**  "The Circuit Court erred in jointly awarding Durkee and Wanek attorneys' fees and costs in the amount of $159,295.35."

   **I.**  **Appellate Jurisdiction**

   The Board, Durkee, and Wanek contend that Lindner's appeal from the disposition of counts 1 (declaratory relief) and 2 (injunctive relief) of his complaint are moot because Lindner no longer owns Lot 6C, and thus lacks standing to maintain claims for equitable relief concerning the property's view plane rights.  We must decide this issue first because "mootness is an issue of subject matter jurisdiction."  Hamilton, 119 Hawaiʻi 1, 4, 193 P.3d 839, 842 (2008).

   In Hamilton the supreme court characterized as "well-settled" the principle that:

> The mootness doctrine is said to encompass the circumstances that destroy the justiciability of a suit previously suitable for determination.  Put another way, the suit must remain alive throughout the course of litigation *to the moment of final appellate disposition*.  Its chief purpose is to assure that the adversary system, once set in operation, remains properly fueled.  The doctrine seems appropriate where events subsequent to the judgment of the trial court have so affected the relations between the parties that the two conditions for justiciability relevant on appeal — adverse interest and *effective remedy* — have been compromised.

119 Hawaiʻi at 5, 193 P.3d at 843 (emphasis added) (citations omitted).

   We conclude that Lindner's conveyance of Lot 6C renders moot his claims for declaratory and injunctive relief concerning Lot 6C's alleged view plane rights.  See Lathrop v. Sakatani, 111 Hawaiʻi 307, 313, 141 P.3d 480, 486 (2006) (holding that appeal from order expunging lis pendens became moot when the property at issue was sold by the defendants, because "the sale of the property prevents the appellate court from granting any effective relief") (citation omitted).  The record confirms that neither the Conants nor the Abruzzos sought to intervene or become substituted for Lindner.  Therefore, a declaratory judgment or

injunction in Lindner's favor would not provide him with an effective remedy because he no longer owns the property benefitted by the alleged view plane rights.  See Queen Emma Found. v. Tatibouet, 123 Hawaiʻi 500, 508, 236 P.3d 1236, 1244 (App. 2010) (commercial lessee's appeal from declaratory judgment in favor of lessor became moot when lessee assigned his interest in the lease to third party who did not seek to intervene or to substitute for lessee as defendant).

None of the recognized exceptions to the mootness doctrine apply to Lindner's claims for equitable relief.  The "capable of repetition, yet evading review" exception does not apply because Lindner is not challenging a government action. Hamilton, 119 Hawaiʻi at 5, 193 P.3d at 843 (noting the "capable of repetition, yet evading review" exception means that "a court will not dismiss a case on the grounds of mootness where a challenged *governmental action* would evade full review because the passage of time would prevent any single plaintiff from remaining subject to the restriction complained of for the period necessary to complete the lawsuit.") (emphasis added).  The "public interest" exception does not apply because the question presented is of a private nature, id. at 7, 193 P.3d at 845 (holding that father's appeal failed to meet the first prong of the public interest exception because his appeal from a temporary restraining order was of purely personal nature), and does not require "an authoritative determination for future guidance of public officers," id. at 6-7, 193 P.3d at 844-45; see also Carl Corp. v. State, Dept. of Educ., 93 Hawaiʻi 155, 165, 997 P.2d 567, 577 (2000) (holding that the subject controversy did not qualify under the public interest exception because no additional authoritative determination was needed regarding the terminated public procurement contract).  And the "collateral consequences" exception does not apply because Lindner has not established "a reasonable possibility that prejudicial collateral consequences will occur" if the circuit court's denial of his equitable claims is not vacated.  Hamilton, 119 Hawaiʻi at 8, 193 P.3d at 846.

In opposition to the Board's first motion to dismiss, Lindner submitted a copy of an addendum to the agreement for the Conants' purchase of Lot 6C (**Conant Addendum**).  The addendum states (among other things) that the Conants appointed Lindner as their representative to maintain this appeal and the underlying lawsuit.

In opposition to the Board's renewed motion to dismiss, Lindner submitted a copy of the "Agreement Between Benny and Sandra Rae Abruzzo and Jeffrey S. Lindern [sic]" (**Abruzzo Agreement**).  The Abruzzos signed the document on April 19, 2022, more than a month after they purchased Lot 6C from the Conants. The record contains no agreement between the Conants, as sellers, and the Abruzzos, as buyers, concerning view plane rights from Lot 6C.  The Abruzzos purported to "appoint Lindner as their representative to maintain [this appeal] and underlying Lawsuit[.]"

Neither the Conant Addendum nor the Abruzzo Agreement are binding on this Court for purposes of determining subject matter jurisdiction.  Cvitanovich-Dubie v. Dubie, 125 Hawaiʻi 128, 141, 254 P.3d 439, 452 (2011) ("It is well-settled that subject-matter jurisdiction cannot be conferred upon a court by agreement, stipulation, or consent of the parties.") (cleaned up) (quoting Gilmartin v. Abastillas, 10 Haw. App. 283, 292, 869 P.2d 1346, 1351 (1994)).

Our ruling on mootness applies to points A. and B. of Lindner's statement of the points of error, which pertain to counts 1 and 2 of Lindner's complaint.  Lindner did not appeal from the disposition of count 3 of his complaint — which claimed damages from Durkee and Wanek because of their alleged violations of the CC&R and the Community Association's Design Committee Rules.

Accordingly: **(1)** the Board's motion to dismiss filed on April 8, 2019, and Durkee and Wanek's joinder filed on April 12, 2019, are granted; **(2)** the Board's renewed motion to dismiss filed on April 13, 2022, and Kirkpatrick's April 20, 2022

joinder, are granted; and **(3)** Lindner's motion to substitute or join parties filed on July 30, 2020, is denied because Lindner has no viable claims against Cummings (who acquired Lot 6D from Durkee after entry of the Final Judgment).

We continue to have jurisdiction over Lindner's appeal from the circuit court's award of damages, attorneys' fees, and costs to Durkee and Wanek, and the award of attorneys' fees and costs to the Board (points C., D., and E. of the statement of the points of error).  Tatibouet, 123 Hawaiʻi at 510, 236 P.3d at 1246 ("[A]lthough a claim for attorney's fees does not preserve a case which has otherwise become moot on appeal, the question of attorney's fees is ancillary to the underlying action and survives independently under the Court's equitable jurisdiction.") (cleaned up).

## II.  Counterclaim Damages

Lindner contends that the circuit court erred in awarding Durkee and Wanek damages on their counterclaims.  The circuit court entered conclusion of law (**COL**) no. 52, which was actually a combined finding of fact and conclusion of law:

> 52.  As to the Counterclaim, the Court concludes that Durkee and Wanek have sustained their evidentiary burden by a preponderance of the evidence.  This Court holds that Lindner is responsible for his share of the road maintenance costs of $1,000 and awards $1,000 to Durkee.  The Court further concludes and thereby holds that Lindner failed to properly maintain the vegetation on his property in violation of CC&R Article VII, [§ ]13.  The Court hereby awards Mr. Wanek $5,000 in damages caused by the intrusion of tree roots and vegetation and/or green rubbish from Lindner's lot into his property.

(**COL 52**)  We review this combined finding and conclusion under the "clearly erroneous" standard because the circuit court's conclusions are dependent on the facts and circumstances of the case.  Est. of Klink, 113 Hawaiʻi at 351, 152 P.3d at 523.  We conclude COL 52 was clearly erroneous.

### A. **Durkee**

Lindner argues that the circuit court made no findings of fact to support or explain COL 52, and that there is no authority in the CC&R for Durkee to seek contribution from Lindner for the cost to maintain their shared driveway.

At trial Durkee testified:

> Q.   And what is your claim about what Mr. Lindner owes you regarding the driveway or culvert?
>
> A.   Well, actually, the driveway was totally gravel from the front entrance to my lot, and I mathematically figured what each section was worth and sent him an invoice, and they all paid except Mr. Lindner, which I don't know what that piece is but it fronts his lot, and from the front entrance to his driveway was a certain distance, so that was just a calculation -- maybe a thousand or two.
>
> .  .  .  .
>
> Q.   To be clear on the gravel driveway issue, all of the neighboring unit owners in your Lot 6 [condominium property regime] have reimbursed you for that gravel work?
>
> A.   Oh, yes, right away.
>
> Q.   With one exception?
>
> A.   Yes, with one exception.
>
> Q.   And that's Mr. Lindner?
>
> A.   Jeff Lindner.  And he argued that I hadn't calculated the distance properly or whatever it was.  It was garbage.

The circuit court found, and Lindner does not challenge:

> 58.   Lindner and Durkee initially had a friendly relationship.  Their relationship also soured over time.  Lindner did not like the fact that Durkee made improvements to the driveway without first asking for Lindner's input and then sent him a bill for his share of the expenses.

The CC&R was in evidence as Joint Exhibit J-11.  The CC&R does not require that any owner improve a driveway.  The only provision concerning driveways appears in Article IV, governing "Design Standards and Control[.]"  That provision does not mention allocation of costs for maintaining or improving

11

shared driveways.  Durkee does not cite, nor do we find, any provision in the CC&R that obligates Lindner to reimburse Durkee for unilaterally improving their shared driveway.  The circuit court made no findings of fact which could support any other potential theory of recovery for Durkee's claimed damages, nor did Durkee's counterclaim plead any such theories.  Because the circuit court made no findings of fact to support any legal basis for awarding damages to Durkee, COL 52 was clearly erroneous as to Durkee.  The circuit court's award of damages to Durkee from Lindner is vacated.

### B.  Wanek

The circuit court concluded (in COL 52) that Lindner failed to properly maintain the vegetation on Lot 6C, in violation of Article VII, Section 13 of the CC&R.  The provision states:

> Landscape Maintenance and Repair.  Each Owner shall, at his sole cost and expense, landscape his Lot and mow the areas of the Lot which have not been landscaped at least once each three months in order to control the growth of the natural vegetation.  All landscaping and other crops or vegetation planted by any Owner on his Lot shall be subject to Design Committee review and approval.  In the event any Owner fails to maintain his landscaping or to mow the areas of his Lot which have not been landscaped, the Board and its authorized agents shall have the right to enter such Lot and perform such mowing and landscape work upon the Lot, and the Owner shall reimburse the Association for the cost thereof promptly upon demand together with interest thereon at the rate of twelve percent (12%) per annum.  In the event of the Owner's default in the payment of same, the amount thereof shall be and become a lien upon the Lot in the manner described in Article VI [Assessments].

The CC&R provide the Community Association with a remedy against an owner who fails to maintain their landscaping or control the growth of natural vegetation.  The CC&R does not create a right of action for damages in favor of other owners; it was error for the circuit court to award damages to Wanek based on Lindner's violation of the CC&R.

However, at trial Wanek testified:

> A.    Well, Mr. Lindner had planted some milo on the property line and it grew -- milo is a plant that will grow to 30 to 40 feet high with a spread of 30 to 40 feet and he planted it seven feet away from the property line, and so it started encroaching on my property.
>
> Q.    What was encroaching on yours?
>
> A.    The milo branches as well as seeds and leaves and droppings and stuff and plus, it's right next to where my leach field is and my leach field is seven feet from the property line, and according to everybody who installs septic systems, they want trees a minimum 25 feet away from your leach field, and the milo is noted for its massive root system. . . .
>
> . . . .
>
> Q.    You started [sic] a counterclaim in this case; correct?
>
> A.    Yes, I did.
>
> Q.    Would you tell the Court what the nature of the counterclaim is.
>
> A.    Well, the nature of the counterclaim is for the last ten years, I've been maintaining this whole property line as well as the milo, the coconuts and all the property line down here that's between my property and Mr. Lindner's property which is out of the subdivision.  So there's about a hundred 50 -- maybe 200 yards of contiguous property line that he refuses to do anything on that I have to maintain.
>
> Q.    When you say you maintain it, what does that mean in terms of efforts hours?
>
> A.    Well, it's probably -- you know, it's not a major thing.  It's probably only an hour to two hours, maybe, per week.  It's cutting the tall Guinea grass.  It's chopping back milo branches, probably in the range of 25 to 30 hours a year, but over ten years, it builds up.
>
> Q.    Is that the basis of your counterclaim for $5,000?
>
> A.    Yes, it is.  I believe I put in probably 200, 250 hours of work over the last ten years, me or one of my friends helping me out, just, you know, chopping stuff up, hauling it away from the green waste.  I think I'm being very reasonable.  Most landscapers are at 40 to 50 bucks an hour these days.

The circuit court found:

> 57.    Lindner and Wanek initially had a friendly relationship.  However, by 2008, their relationship had soured; Wanek repeatedly complained about Lindner's refusal to maintain the milo trees and coconut palms that Lindner

> had planted on Lot 6C along the boundary with Wanek's
> Lot 6E. ***The milo trees are currently encroaching on Wanek's
> property and their roots are threatening the leach field for
> his septic system***. In response, Lindner told Wanek that he
> would make him cut down his orchard.

(emphasis added).  Lindner does not challenge these findings.

The circuit court concluded (in COL 52) that Wanek was entitled to recover "damages caused by the intrusion of tree roots and vegetation and/or green rubbish from Lindner's lot into [Wanek's] property."  Wanek's counterclaim alleged (among other things) nuisance.  We have held:

> Plants whose overhanging branches cast shade or drop leaves,
> flowers, or fruit, or whose roots interfere only with other
> plant life, are not nuisances.
>
> Overhanging branches or protruding roots constitute a
> nuisance when they actually cause, or there is imminent
> danger of them causing, ***material harm to a person or to
> property other than plant life***.
>
> When overhanging branches or protruding roots actually
> cause, or there is ***imminent danger*** of them causing, harm to
> a person or to property other than plant life, the damaged
> or imminently endangered neighbor may require the tree's
> owner to pay for the damage and to cut back the endangering
> branches or roots and, if that is not done within a
> reasonable time, the damaged or imminently endangered
> neighbor may cause the cutback to be done ***at the tree
> owner's expense***.

Spittler v. Charbonneau, 145 Hawaiʻi 204, 210, 449 P.3d 1202, 1208 (App. 2019) (reformatted) (emphasis added).

Wanek's testimony about "[t]he milo branches as well as seeds and leaves and droppings and stuff[,]" without more, did not establish a nuisance; Wanek was not entitled to an award of damages based on the time he spent "cutting the tall Guinea grass" or "chopping back milo branches[.]"  While Wanek ***would*** be entitled to recover the expense of cutting back the milo tree ***roots*** that imminently threatened harm to the leach field of his septic system, he failed to establish this item of damage with reasonable certainty.  See Ferreira v. Honolulu Star-Bulletin, Ltd., 44 Haw. 567, 576, 356 P.2d 651, 656 (1960) (holding that "[t]he extent of plaintiff's loss must be shown with reasonable certainty and that excludes any showing or conclusion founded

upon mere speculation or guess").  The record contains no reasonable basis for apportioning the "200, 250 hours of work over the last ten years" Wanek said he spent dealing with Lindner's vegetation between compensable and noncompensable time. The circuit court's award of damages to Wanek from Lindner is vacated.

### III. Attorneys' Fee Awards

> Generally, under the "American Rule," each party is responsible for paying for [their] own litigation expenses. A notable exception to the "American Rule," however, is the rule that attorneys' fees may be awarded to the prevailing party where such an award is provided for by statute, stipulation, or agreement.

TSA Int'l Ltd. v. Shimizu Corp., 92 Hawaiʻi 243, 263, 990 P.2d 713, 733 (1999) (cleaned up).

### A.    The Board

The circuit court's Findings & Conclusions stated: the Board "is the prevailing party as to Lindner's claims against [the Board], and may seek an award of its reasonable attorneys' fees and costs against Lindner pursuant to [Hawaii Revised Statutes (**HRS**)] [§ ]421J-10."  HRS § 421J-10 (2004) provides, in relevant part:

> **Attorneys' fees and expenses of enforcement.**
>
> . . . .
>
> (b)   . . . .  If a member is not the prevailing party in any court action against an association, . . . or its board of directors, to enforce any provision of the association documents or this chapter, then all reasonable and necessary expenses, costs, and attorneys' fees incurred by the association shall be awarded to the association[.]

We held that Lindner's claims against the Board are moot.

> Where the underlying controversy has become moot, there is no right to review or redetermine any of the issues in the underlying action solely for the purpose of deciding the attorney's fees question.  Instead, the question of attorney's fees and costs must be decided based on whether the recipient of the attorney's fees and costs award can be

15

> considered to be the prevailing party in the underlying
> action, without regard to whether we think the trial court's
> decision on the underlying merits is correct.

Tatibouet, 123 Hawaiʻi at 510, 236 P.3d at 1246 (cleaned up).
Lindner's complaint sought (among other things) to enforce the
CC&R.  The Board was the prevailing party before the circuit
court.  The circuit court did not err by awarding the Board its
attorneys' fees under HRS § 421J-10.

Lindner does not contend that HRS § 421J-10 does not
apply.  Instead he argues that the Board was a necessary party
under Rule 19 of the Hawaiʻi Rules of Civil Procedure (**HRCP**)
("Joinder of Persons Needed for Just Adjudication"), such that it
"should not recover fees for amounts that it would have had to
incur in any event due to its status as a necessary party to this
dispute."[10]  He contends that the circuit court erred by denying
his request that the Board's attorneys' fee request "be reduced
by at least 50%."  Lindner's argument is without merit because
HRS § 421J-10 applies to "***any*** court action against an
association, . . . or its board of directors, to enforce any
provision of the association documents[.]"  (Emphasis added.)  It
does not matter whether the Board was sued under HRCP Rule 19 or
HRCP Rule 20 ("Permissive Joinder of Parties").

Lindner also argues that the circuit court erred by
rejecting his objections to certain attorneys' fees and costs.
The Board requested a total of $221,253.55 in attorneys' fees and
taxable costs.  The circuit court awarded the Board a total of
$188,440.62 in fees and costs, a reduction of $32,812.93.
Lindner argues that the circuit court abused its discretion by
not reducing the award by an additional $19,545.41, but his
amended opening brief does not explain which additional fee or
cost items should have been disallowed, or why; he even argues
for a $378.02 reduction for the cost of meals that the circuit

---

[10]    Lindner cites Norris v. Phillips, 626 P.2d 717 (Colo. App. 1980),
Cohen v. Kite Hill Cmty. Ass'n, 191 Cal. Rptr. 209 (Ct. App. 1983), and McCraw
v. Aux, 696 S.E.2d 739 (N.C. Ct. App. 2010) for this proposition.

16

court in fact disallowed.  We decline to search the record to attempt to discern the factual and legal bases for Lindner's arguments on appeal.  See Haw. Ventures, LLC v. Otaka, Inc., 114 Hawaiʻi 438, 480, 164 P.3d 696, 738 (2007) ("[T]his court is not obligated to sift through the voluminous record to verify an appellant's inadequately documented contentions.") (citations omitted).  The award of attorneys' fees and costs to the Board is affirmed.

### B.    **Durkee and Wanek**

The circuit court's Findings & Conclusions stated that "Durkee and Wanek are the **prevailing parties as to Lindner's claims against them**, and may seek an award of their reasonable attorneys' fees and costs against Lindner pursuant to CC&R Article X, [§ ]4."  (Emphasis added.)  This provision of the CC&R states, in relevant part:

> Section 4.  Remedy for Violation.  In addition to the other remedies provided herein, if the Owner of any Lot in Aliomanu Estates or any part thereof or interest therein violates any provisions hereof, Declarant, the Association or the Owner of any Lot or part thereof or interest therein may bring an appropriate civil action against the defaulting party to enforce specific compliance with this Declaration, or to recover damages for such violation, plus costs and a reasonable attorney's fee as may be incurred **by said prosecuting party in such proceedings or action**; provided, however, that Declarant or the Association shall have no duty under any circumstances to enforce compliance with this Declaration.

(emphasis added).  The circuit court's "Order Granting Defendants John A. Durkee and Richard Wanek's Joint Motion for an Award of Attorneys' Fees and Costs" cites no other authority for the fee award.[11]

---

[11]    The circuit court's Findings & Conclusions also cited DFS Group L.P. v. Paiea Props, 110 Hawaiʻi 217, 131 P.3d 500 (2006), Piedvache v. Knabusch, 88 Hawaiʻi 115, 962 P.2d 374 (1998), and Amfac, Inc. v. Waikiki Beachcomber Inv. Co., 74 Haw. 85, 839 P.2d 10 (1992).  The issue in those cases was whether the statutory cap on attorneys' fee awards applied to declaratory judgments.  The attorneys' fee statutes applicable to those cases were either HRS § 607-14 or former HRS § 607-17, neither of which applies to this case.

Article X, Section 4 of the CC&R applies only to a "prosecuting party" who sues an owner "to enforce specific compliance with" the CC&R.  The CC&R does not provide for an award of attorneys' fees to a **_defendant_** who prevails in a prosecuting owner's unsuccessful civil action "to enforce specific compliance with" the CC&R.  The circuit court abused its discretion by awarding attorneys' fees to Durkee and Wanek.

Durkee and Wanek's joint motion for attorneys' fees was also based upon them being "the prevailing parties on their claims that they asserted in the Counterclaim as against [Lindner]."  As we explained above, the circuit court erred by awarding damages to Durkee and Wanek on their counterclaim.  Accordingly, the circuit court also abused its discretion by awarding attorneys' fees to Durkee and Wanek.

## CONCLUSION

For the foregoing reasons, **(1)** the "Order Granting Defendant Board of Directors of the Aliomanu Estates Community Association's Motion for Award of Attorneys' Fees and Costs Filed 4/18/17" entered by the circuit court on June 28, 2017, is affirmed; **(2)** the "Order Granting Defendants John A. Durkee and Richard Wanek's Joint Motion for An Award of Attorneys' Fees and Costs Filed April 24, 2017" entered by the circuit court on June 22, 2017, is vacated; and **(3)** the Final Judgment entered by the circuit court on July 21, 2017, is vacated in part, and this case is remanded to the circuit court for further proceedings consistent with this memorandum opinion.

DATED:  Honolulu, Hawai'i, June 14, 2022.

On the briefs:

Paul Alston,
Thomas E. Bush,
for Plaintiff/Counterclaim
Defendant-Appellant.

John D. Zalewski,
Michelle J. Chapman,
for Defendant-Appellee

/s/ Keith K. Hiraoka
Presiding Judge

/s/ Karen T. Nakasone
Associate Judge

/s/ Sonja M.P. McCullen
Associate Judge

Board of Directors of the
Aliomanu Estates Community
Association.

David J. Minkin,
Miyoko T. Pettit-Toledo,
Laurel K. S. Loo,
for Defendant/Counterclaimant-
Appellee John A. Durkee.

Richard E. Wilson,
for Defendant/Counterclaimant-
Appellee Richard Wanek.